## JOHN K. OTLEY v. HAVILAND, CLARK & Co.

1. MORTGAGE: INTEREST OF MORTGAGOR NOT SUBJECT TO SALE UNDER EXECUTION.—The interest of a mortgagor is not subject to seizure and sale under execution, if any part of the debt secured by the mortgage be unpaid; and the rule is the same, when the execution emanates from a judgment against the mortgagor, to enforce a mechanic's lien, accruing subsequently to the execution and registration of the mortgage. See *Boarman* v. *Catlett*, 13 S. & M. 149; *Wolfe* v. *Dowell*, Ib. 103; *Bolwin* v. *Jenkins*, 23 Miss. R. 206.

2. MECHANIC'S LIEN: WHEN PARAMOUNT AS TO THE BUILDING ERECTED.—Under the provisions of the Act of 1840 (Hutch. Dig. 627), the lien of a mechanic for his labor and materials, furnished in the erection of a building under a contract with the proprietor of the land, is, as to the materials furnished, and the building erected, superior to any prior lien on the land.

3. SAME.—A mortgagor who, by the terms of the mortgage, is entitled to the possession of the mortgaged premises until foreclosure and sale, is, prior to the sale, the proprietor of the land within the meaning of the Act of 1840 (Hutch. Dig. 627), regulating the lien of mechanics on materials furnished and buildings erected by them.

4. SAME.—RIGHT OF PURCHASER OF BUILDING TO REMOVE IT.—The purchaser of a building, under a proceeding to enforce the mechanic's lien (which extends only to the building under the Act of 1840), is entitled to remove it from the premises on which it is erected.

5. CHANCERY: JURISDICTION.—A court of equity is the proper forum to enforce the right of a purchaser to remove a building sold under a proceeding to enforce a mechanic's lien.

6. CASE EXPLAINED.—The case of *Hoover* v. *Wheeler*, 23 Miss. R. 314, cited and explained.

ERROR to the Chancery Court of Lowndes county. Hon. William L. Harris, chancellor.

*Dickinson* and *Love*, for plaintiff in error.

Otley v. Haviland, Clark & Co.

Defendants demur to the whole bill, and assign some ten causes of demurrer. We will confine ourselves to the seventh cause, which presents the question whether the lien of the mechanic attached to Hill's interest in the lot and the building erected thereon, and whether that interest accompanied with possession until sale by the stipulations of deed in trust could be sold, by proceeding in strict conformity in the mode pointed out by the statute, and vest in the purchaser such title as Hill had.

Among all the causes of demurrer, there is no one which seems seriously to question complainant's title to the building, and especially the two rooms above the rooms occupied by Carrington. *Smith* v. *Otley*, 26 Miss. 291, settles three points in this case.

1. That Hill had the equity of redemption, and the right of possession, until a sale under the deeds in trust. 2. That the contract with Symons for lumber was the date of the note, 27th March, 1848. 3. That the deed of trust of May 2d, 1848, did not conflict with the lien of Symons, to which may be added that Otley's remedy is in equity.

It is admitted, that, before the purchase by defendants, the amount due on the deed in trust of June 1st, 1847, was tendered to defendants; had the tender been accepted, the trust deed would have been satisfied, and no claim upon the property could have existed prior in time to the claim of Otley; and it cannot be denied, that the tender and refusal places Otley in the condition he would have occupied had the money been accepted.

The lien being thus removed, the litigation, if any, for the possession of the property would have been between Hill and Otley; and could any doubt exist that the interest of Hill had passed to the purchaser, by the remedy provided to enforce the mechanic's lien?

The defendants cannot be in a better condition than Hill, by having refused to permit Otley to pay off the incumbrance of the deed in trust of June 1st, 1847.

This court has decided that the lien of the mechanic attaches to the property described in the petition, from the date of the agreement, and may be enforced after judgment, by special execution. *Richardson* v. *Warwick et al.* 7 How. 141 (of opinion).

The lien is the creature of the statute, and attaches to the actual

interest of the proprietor. This court, in *Falconer et al.* v. *Frazier*, 7 S. & M. 243 (opinion), say, " The defendant Falconer filed a plea putting in issue the fact that he was the proprietor or lessor of the premises on which the building was erected, or repaired. The statute does not contemplate the trial of such an issue in this form of proceeding. Nothing can be affected by the judgment, except the interest of the party to the record. If the party have no interest, the judgment will confer no lien. The lien will be confined to the actual interest."

In the case at bar, Hill had received a deed, and in his deed of trust had stipulated to remain in possession until the sale. This deed in trust was a mere security for the payment of the purchase-money, and Otley's purchase was subject to this incumbrance, which he offered to remove before defendants sold the property under the deeds in trust. If the property was not of sufficient value to satisfy the balance due on the deed in trust, the sale under the mechanic's lien might have been enjoined as to all except the two rooms above the rooms of Carrington. Or, perhaps the sale might have been enjoined, whether the property was insufficient or not, for the settlement of the rights of all parties in equity.

The principle of the Act of 1840, that the lien of the mechanic attaches to the actual interest of the proprietor, and that the object is to enforce that lien by strictly pursuing the mode prescribed by the statute, is also clearly recognized by this court in *Hoover* v. *Wheeler*, 23 Miss. 316, 317 (opinion). The court say (316), " Dinkins, therefore, could not make a contract to impair the right of complainant; and the defendant could acquire no greater rights, under his contract in 1844, than Dinkins had power to confer. Defendant's rights could only attach to such interest as Dinkins actually had in the estate. The note secured by the mortgage was due in November, 1841; and from that period the mortgagor was, at law, a mere tenant at will of the mortgagee."

The court subjected all the interest of Dinkins to the satisfaction of the lien of the mechanic. *Hoover* v. *Wheeler*, 23 Miss. 316. Had Wheeler paid off the mortgage lien, or offered to do so, would not the whole property have been subjected to the lien of the mechanic? Such was the principle of this decision, and such is the object of the statute. 31 Miss. 253. Now, if the statute does not

attach the lien to an equity of redemption, when the grantor is in possession, and to remain in possession until the sale, what right had Wheeler to enforce his lien ?    (In *Hoover* v. *Wheeler*, the property, probably, was insufficient to pay both demands.)

And in *English* v. *Foote*, 8 S. & M. 451 (opinion), had English paid off the amount due vendor, the lien would have been sustained (under Act of 1838).    The principle here contended for is fully recognized by the late statute in relation to liens of mechanics; but it is only the recognition by statute of a principle already established as law, in the decisions above referred to.    Revised Code, 327, Art. 13.

In the views here advanced, justified, as we believe, by the statute of 1840, and repeated decisions of this court, we claim the entire property upon the payment of the balance due upon the deed in trust, of June 1, 1847.    Of this, defendants should not be heard to complain.    They had notice of our lien; and had they acted upon the sacred truth, that the "laborer is worthy of his hire," instead of resorting to the deed of trust of May 2d, 1848, justice would have been done to all parties without litigation.

The bill is in the alternative, and if not entitled, in the opinion of the court, to the entire property, we ask that complainants' right be established to the building.

The language of the statute is plain and unequivocal.    It is so unambiguous and positive, as to admit of no doubt, or to require a resort to the rules of construction.    It operates as a severance of the house from the land, for the purpose of securing the mechanic's lien upon the building, where there is a prior lien upon the land. If the statute does not mean this, then the legislature which passed the act is stultified; and the same remark will apply, with full force, to the act in relation to the relief of mechanics.    (Revised Code, 327, Arts. 1 and 12.)

It is immaterial what the common law was upon this subject of severance; the statute is the master, and must be obeyed, if the act be constitutional; and whenever a power is given by statute, everything necessary to make it effectual, to attain the end, is implied.    4 Kent, 464.

Now, the Act of 1840 declares, that any person or persons who shall have furnished such materials as aforesaid shall, respectively,

have a lien, to secure the payment of the same, upon the building and materials aforesaid; and said building and materials aforesaid shall not be subject to any other lien whatsoever, until the aforesaid lien shall have been cancelled according to the provisions of this act. (Hutchison's Code, 627, Sec. 1 and 2.) And in the latter clause of 2d section of same act, it declares, "then, and in that case, the said lot or parcel of ground, or the term of said lessor, to be equally subject to the payment of said contract, as in the case of the house, building, &c., erected or constructed thereon." Did the legislature give a lien on the building to the mechanic, subject to no other lien? The answer must be in the affirmative.

The severance of the building from the land upon which it is erected, has been recognized and declared by repeated acts of the legislature of this State; among them are the Acts of 1821, Hutchison's Code, 626; Act of 1838, Hutchison's Code, 627; the Act of 1840, above quoted; also, Revised Code, 327, Arts. 1 and 12; also, Act of January 22, 1841, Hutchison's Code, 917, to exempt certain property from execution. The 3d section exempts a lot in town of the value of fifteen hundred dollars, exclusive of buildings and improvements; the 4th section provides, that if the lot exclusive, &c., be worth more than fifteen hundred dollars, and cannot be divided, "the sheriff, or other officer, shall sell his or her interest in the lot above the sum of fifteen hundred dollars, and the purchaser shall become tenant in common with him or her, to the extent of such surplus according to the valuation made as herein directed, and shall receive from the sheriff a deed to that effect."

The Act of 1840, for relief of mechanics, may be carried into effect where the lot upon which the building is erected is owned by one person, and the building by another. (31 Miss. 89.) The parties might be declared tenants in common, to the extent of their respective interest, defined as required by the bill of complaint.

The demurrer assumes the ground that the legislature does not possess the power so to change the common law, that an equity of redemption may be subjected to the lien of the mechanic, and sold by special statutory execution. We insist that the power is unquestionable, and that it has been exercised in the Act of 1840. The objects of the law must be accomplished, whether the bill or petition be placed upon the law or equity side of the Circuit Court

docket. The nature and object of the proceedings are not changed by the docket upon which the clerk is authorized to place the cause; and if he had but one docket, the will of the legislature would not be defeated; nor would it change the nature and object of the suit, or defeat the object of the legislature, that questions of fact were ascertained by a jury; or, if witnesses gave their testimony orally instead of by deposition. The form of remedy is a mere question of policy, over which the legislature has entire control. (4 How. 647.) Upon the facts stated in the bill, the general demurrer should be disallowed.

The interest of Hill was subject to the statutory execution, without any tender of the amount due on the deed in trust of June 1st, 1847; but having made the tender before the sale under the deeds in trust, we are entitled, upon the payment of the amount, to the entire interest of Hill in the property embraced by and appropriated to the building.

Our right to the two rooms above the rooms occupied by Carrington is not affected by the deed in trust, because the lien of the deed was released, as stated in the bill, before the sale of the property under the statutory execution.

As the lien on the land did not affect our rights to Hill's interest in the building, should the court decide that Hill's interest in the land was not transferred by the sale, we ask that the parties may be declared tenants in common, in the mode pointed out by the bill.

Defendants rest their defence upon the ground that an equitable interest is not subject to seizure and sale by execution at common law. Our position does not conflict with the decisions of this court, in which the law on this subject is well settled and repeatedly recognized. They certainly have no application to the facts presented by the bill, where the proceedings were by statute, establishing principles, and conferring rights unknown to the common law, and pointing out, in positive terms, the modes by which those rights were to be enforced. (*Huntington* v. *Cotton*, 31 Miss. 253.) But the court has never yet decided that a proceeding, in strict conformity to the statute, would not reach and transfer the interest of the proprietor, without regard to the nature of that interest; but have, in every case, held that the statute subjected all his interest.

*Laud & McGee* v. *Muirhead*, 31 Miss. 89, contains a full exposition of the force and object of the statute, and fully sustains, on this point, the former decision of this court.

This is a bill to assert an equitable title to real estate. The complainant claims title through Hill, as a purchaser at executor's sale upon a judgment to enforce a mechanic's lien, for lumber and materials used in building a house on the lots, in favor of one *Symons* v. *Hill.* Under that execution, the interest of Hill in the lots and possessions was sold, and the appellant became the purchaser; and the question is, what interest did he acquire thereby?

*Harrisson* and *Whitfield*, for defendants in error.

For the sake of argument, we will suppose, that, the execution of *Symons* v. *Hill*, under which the sale to Otley took place, issued out of equity and not at law. What interest could such sale, under the circumstances, impart to the purchasers? The bill shows, that, the lumber contract was made in March, 1847; and the demurrer admits the fact. But, the argument of the appellant ignores, and seeks to evade the force of this admission, by assuming that the note fixes the date of the mechanic's lien. This cannot be done. He must abide by the case made in his bill; he will not be permitted to shift his ground, and set up a contract different from the one which is expressly made the foundation of this whole procedure. *Cantzon* v. *Dorr*, 27 Miss. Rep. 251.

It is true, that, this court, in *Smith* v. *Otley*, 26 Miss. Rep. 297, says, the nature of the contract *as then* before the court, so far as its date was concerned, did not sufficiently appear, otherwise than by the note. But here, the true date, March, 1847, is an admitted fact on the record; and the statute fixes that as the time of commencement of the lien. *Bell* v. *Passmore & Cooper*, 26 Miss. Rep. 652. We concede, that, if Hill had afterwards acquired the title, the lien would have attached from that date, and not from the time of making the contract. But we will show that Hill never did acquire a title, at any time, to the property in question.

In March, 1846, Malone was in possession under his contract of purchase from Winston; but the legal title was in Banks, as trustee, to secure the payment of the purchase-money. Hill had nothing to do with the premises, and did not think of purchasing until more

than a year afterwards. The 1st of June, 1847, is the date of his purchase.

The lumber contract with Symons was not in reference to this building at all, but to others, upon which Hill was then engaged. It follows, therefore, that the contract, at its date, created no lien, because Hill was a stranger to the premises, and did not pretend to have any title. *Falconer* v. *Frazier*, 7 S. & M. 235; *English* v. *Foote*, 8 Ib. 451; *Shotwell & Mayrant* v. *Gilgore*, 26 Miss. Rep. 125; 27 Ib. 43. The proposition is self evident, that, where there is no property, there can be no lien. *Moody* v. *Harper*, 25 Miss. 493, 494. How could a contract between Hill and Symons create a lien upon Malone's equity, and Banks's legal title, when they were both ignorant of, and had nothing to do with, any such contract? Malone is in possession under his equity, with the legal title conveyed away to Banks to secure the purchase-money. This being the attitude of the title when Malone sold his equity to Green Hill, in June, 1847, what did the latter acquire by his purchase? The deed of trust to Banks being in full force, and the purchase-money wholly unpaid, left Malone himself with only an imperfect equity, and this was all he conveyed to Green Hill. The title of Hill to the land was not even equitable; but was a mere right to perform certain conditions, to pay the purchase-money, and thereby obtain an imperfect equity. Malone's imperfect equity in Hill was no title at all. An equitable title is such a one as a court of conscience will enforce; but, it cannot enforce a title until the purchase-money is paid. Therefore, until this is done, there can be no such thing as an equitable title. Malone himself had no title, either at law or in equity; his right existed merely in contract. An imperfect equitable title to land is a misnomer; there is no such thing. The title, before the payment of the purchase-money, is not to the land but to the contract. It is the performance of his part of the contract by the vendee that gives existence to the equitable title. 8 S. & M. 451. Therefore, nothing passed to Hill by Malone's deed except a right to the contract, which he conveyed away to Stewart, so soon as he acquired it, to secure Malone's purchase-money. The deeds from Malone to Hill, and from Hill to Stewart, were simultaneous, and allowed no time for the lumber, or any other lien to attach. Consequently, two unperformed contracts intervened between Hill

and the land. And such was the condition of the title from the beginning to the end of this pretended mechanic's lien, from March, 1846, until years after Otley's purchase. So, it is of but little importance to the legal merits of this controversy, whether the date of the contract be fixed at the date of the note, or at the time alleged in the bill. Either view would be impotent to create the lien sought to be enforced, as it must always be confined to such property as is liable to levy and sale under execution. *Robertson* v. *Demoss,* 23 Miss. Rep. 300.

The reason assigned for not allowing such uncertainties to be sold is, the destruction it would work to the debtor's estate. Under such a procedure, a large equitable estate might be exhausted in the satisfaction of a small demand. In the present case, for instance; Haviland, Clark & Co. paid for this property between six and seven thousand dollars, while Otley paid, under Symon's mechanic's lien, about two hundred.

In *Goodwin* v. *Anderson,* 5 S. & M. 743, 744, this court says: " The great sacrifice which would result from the sale of interests, the extent of which was not ascertained; and which would have to be adjudicated in equity, recommend the rule to our favorable notice. It has already been adopted in regard to personal estate, and our statute embraces real, as well as personal property. We see no reason to draw a distinction between them. On the whole, our conclusion is, that in a case thus situated, in which the whole purchase-money has not been paid, the vendee has no interest which can be sold under an execution at law." Apply this to Hill's interest, with not a dollar of the purchase-money to Malone paid, and not a dollar of Malone's purchase-money to Winston paid, where can a lien attach, or how can there be the levy of an execution? Can equity, any more than law, sanction a sacrifice of property by selling an unascertained interest? It is guilty of no such reproachful and calamitous conduct. It never sells or permits to be sold, any such vague title as Green Hill's; nor would it even allow such a one as Malone's to be sold. It is true, that equity has the power to subject Hill's interest, if he had any, but there are indispensable prerequisites to the exercise of this power, to wit: the interest to be sold must be ascertained; the bidder must be informed of the nature and amount of the incumbrance; an account must be stated; and the

amount of the purchase-money due must be ascertained. All this must be done as to the interests of both Malone and Hill, before equity would permit Hill's to be sold.

A court of equity may sell an equitable interest, because it can ascertain the nature and extent of the thing sold. A court of law cannot sell such an interest, because it does not possess the power. At law, a purchaser buys an equity as he would a lottery ticket; it may be a prize, or it may be a blank, and involve him in litigation. Hence, no one will buy, except at lottery ticket prices. Will equity tolerate such a proceeding any more than law? If it did, it would be a reproach to the legislature and a curse to the country.

Equity, however, as we have intimated, has the power to reduce this lottery business to a certainty, so that the bidders will know for what they are bidding, as they could do at an execution sale at law.

But Symons made neither Malone, nor Winston, nor Banks, nor Haviland, Clark & Co., parties to the proceeding against Hill upon the lumber contract. It is not even hinted in the petition to enforce the mechanic's lien on Symons, that there is an outstanding title, or any purchase-money unpaid; hence, there is no possibility of ascertaining the nature and extent of Green Hill's interest. No account can be stated between him and Malone. None between Malone and Winston. Speculation is the object, and therefore, he proceeds to sell Hill's interest, with all of its doubt and uncertainty. Such a sale is a nullity, both at law and in equity. It is a fraud upon the debtor, upon the bidders, and a fraud upon Winston, on Malone, on Haviland, Clark & Co. But the sale is made. Otley buys property worth six or seven thousand dollars for two hundred, and now comes into equity to have his speculation confirmed!

The rule that renders void the sale of an unascertained interest, is as applicable to a court of equity as to a court of law; the reason of the rule being equally cogent and controlling in both forums. Symon's true policy, then, would have been to file his bill in chancery, and make all persons interested in the title to the property parties, and thus sought, after he obtained his judgment at law, to ascertain and subject Hill's equities, as uncertain as they were, to its payment. But, this he failed to do, and Otley, therefore, takes nothing by his bid. For, it is a settled maxim in equity, that it is the business

of the purchaser to see that all the parties, who are necessary to convey, are before the court; for if he takes a title which a decree in an imperfect suit does not protect, he must abide the consequences. 1 Barb. Chan. Prac. 529; 2 Danl. Ch. Plead. & Prac. 1455, 1456; 1 Sch. & Lef. 386; 2 Ib. 556. It is plain, therefore, that if the Symons execution had issued out of equity, Otley would take nothing by his purchase. But we affirm with great confidence, and now propose to show, that the whole proceeding to enforce the mechanic's lien was purely a proceeding at law.

Equity requires all persons in interest to be made parties and brought into court. Where purchase-money is due, it ascertains the amount by ordering an account to be stated. And when it decrees a sale, it is of an ascertained, and not of an indefinite interest.

Symons, in his petition, ignored Hill's debt to Malone for the purchase-money, and his trust deed to secure it. Also, Malone's debt to Winston for the purchase-money, and his trust deed to Banks to secure it. Indeed, he ignored every principle of equity jurisprudence, and adopted the proceeding as one purely at law. He elected to regard Hill as the proprietor or lessor of the premises, and as having power to incumber them with the mechanic's lien, under the statute, without reference to the right or title of any other person. Hill alone is concerned, and no one else has a right to be heard. *Falconer* v. *Frazier*, 7 S. & M. 235; 31 Miss. 89. The Circuit Court, as a court of law, has jurisdiction of the whole case presented by the petition, and proceedings under it. The petition, the summons, the jury and verdict, the judgment and the *venditioni*, are all at law. It nowhere alludes to a court of equity. Hutch. Dig. 627, 628. The proceedings themselves are based entirely upon the same idea. This precise question has undergone judicial investigation, and is settled by this court in consonance with the argument here made. *Richardson* v. *Warwick*, 7 How. Rep. 140. See also, *Falconer* v. *Frazier*, 7 S. & M. 242; *Selph* v. *Howland*, 23 Miss. Rep. 266.

Upon examination, it will be seen that this execution differs in no essential particular from an order to sell attached goods, or a *venditioni exponas ;* and there is no principle to be found, either in the statute, or decisions of this court, which would enable it to seize and sell an imperfect equity. It has only the power and virtue

of an execution at law; and this court has uniformly determined that such an interest as Green Hill's is not the subject of seizure and sale under such process. This is true, whether the owner of the equity is in possession or not; whether it is real or personal property; or whether the interest is incumbered by trust deed, bond for title, or mortgage. *Boarman* v. *Catlett,* 13 S. & M. 150; 4 Ib. 163; 5 Ib. 449, 730; 7 Ib. 111; 12 Ib. 608; 13 Ib. 108, 431, 731; 23 Miss. 59, 207, 298; 24 Ib. 103; 25 Ib. 471; 27 Ib. 245, 246, 249; 1 S. & M. Ch. Rep. 323; Adams's Equity, 343. Indeed, this position is admitted by counsel on the other side, and these authorities would not be cited but for the attempt to defeat their effect by the use made of *Huntington* v. *Cotton,* 31 Miss. Rep. 253. That case, however, does not touch the principle of these authorities. There, it was not shown that the stock ever issued, or that the bond ever could be binding; and the mortgage was only to operate in case the loan was made, of which fact there was no proof.

The bill lays much stress on a tender, which, it alleges, Otley made after his purchase at sheriff's sale. What sum was tendered? Only the amount due to Malone from Green Hill. The purchase-money from Malone to Winston, secured by the deed of trust to Banks, was entirely overlooked. Besides, Otley must stand or fall by his purchase. His interest was unalterably fixed by the sale; and if that was void, as we have shown, a subsequent tender could not render it valid. If Hill's interest was not subject to sale under execution, a subsequent tender could not make it so. In fact, a tender by Symons, *before the sale,* is the only one that could avail anything; and that would have to be for the amount of the purchase-money due both from Hill and Malone. Had this been done before the judgment in favor of Symons, or perhaps, even before the sale, his mechanic's lien might have attached; but, by no possibility, could a tender of the amount due on both deeds of trust, *after the sale,* give the mechanic's lien a retrospective effect. Otley bought nothing at the sale, and therefore had no right to make the tender to redeem the property. 13 S. & M. 150; 12 Ib. 608.

The clause of the statute of 1840, Hutch. Dig. § 1–2, 627, 628, which provides, that "the building and materials shall not be subject to any other lien whatever, until the mechanic's lien shall have been cancelled," &c., is also relied upon to sustain the complaint.

This statute will not be construed so as to interfere with prior incumbrances; and so soon as the materials are wrought up into a building permanently fixed to the soil, they lose their character of materials, and become a part and parcel of the freehold. *Stillman* v. *Hamer*, 7 How. Rep. 423. The idea of a severance of the building, fixed to the soil, from the soil and freehold, is not peculiar to this case, but one certainly contrary to the well-recognized principles of law, as expounded by this court. The mechanic's lien does not give the building any such movability, or power of locomotion, to trundle itself about the streets.

In *English* v. *Foote*, 8 S. & M. 451, this question of severance arose, and the distinction here drawn between the building and the soil was there distinctly made by counsel, and urged upon the court, on the ground that the lien attached as fast as the buildings were erected and as they progressed; so that no rights which might seem to accrue to the owner of the land, from the fact that whatever was annexed to the freehold became a part of it, could intervene and defeat such lien. In reply, the court says, " It is conceded by the counsel of complainants, that they cannot go upon the lot for payment; but it is insisted, that they may go upon the house. It is clear, however, that the lien can operate on nothing beyond the right of the person for whom the building is erected. Foote had no right to the lot, except subject to that of the vendor, which, under the circumstances, was equivalent to a mortgage. Indeed, it only amounted to a conditional sale; and if the contract were not complied with by the vendee, it might be rescinded by the vendor. In that case, the purchaser would not be entitled to the benefit of the improvements, or to compensation for them. The lien of the vendor was prior to that of the mechanic. The latter could stand in no better condition than the vendee; and he could not dispose of the improvements unless subject to the rights of the vendor. These complainants must occupy the same position. As a general rule, whatever is annexed to the freehold becomes a part of it, and cannot be severed from it. There are many exceptions to the rule, but it applies with all its strictness between vendor and vendee."

This was a bill in chancery, and Foote was in possession of the premises, under a bond for title, when the mechanic's contract

was made, and the building erected. There can be no difference between the bond for title in that, and the trust deed in this case, except that Hill's title is two deep, and this only one. *Wolf* v. *Dowell*, 13 S. & M. 150.

Again, the statute never intended that the tenant should incumber the freehold by liens of any description. 8 S. & M. 760; 7 Ib. 372. And nothing can be affected by the judgment of Symons except Hill's interest, as he was the only party to the record. If Hill had no interest, or what little he had was buried out of sight by trust deeds, the mechanic had no lien, and the judgment conferred none, except subject to that of prior incumbrances. Of course, the rights of third persons remained untouched, and in full force. 7 S. & M. 243, 372; 8 Ib. 760; 26 Miss. 652; 31 Ib. 89. But in *Hoover* v. *Wheeler*, 23 Miss. 316, this question is forever put to rest. The mechanic's lien was made to yield to Hoover's older mortgage. Dinkins could not impair any rights of the mortgagor by his contract with the mechanic; and the latter could acquire no greater right or power than Dinkins could confer.

The first point made in this case, and ruled in our favor by the court, was, that under the statute of 1840, the lien in favor of the mechanic was superior to the lien created by the mortgage. The second point was, that Hoover, having a full knowledge that Wheeler, as a mechanic, was employed by Dinkins to make the improvements specified in the pleadings; and not objecting or dissenting, waived his lien under the mortgage to the extent of Wheeler's debt. In regard to this, the court says, "When the mortgage was placed on the record, Hoover's rights were then protected by law. He had given such notice as the law prescribed, and was not bound to assent or dissent to any agreement made by the person in possession for improvements."

In that case, the mechanic himself was seeking relief by bill in chancery, to obtain payment for his labor and materials; and the court gave him the rent of the building while Dinkins was in possession; but does not say, that the house or lot was subject to seizure and sale under an execution at law in favor of the mechanic. On the contrary, the decision is directly against such an idea. This case, however, is very different. Here, the mechanic is paid, and a speculator is seeking, not the rent during the short

time Hill was in possession, but to acquire a title to property worth six thousand dollars, which he bid off for two hundred! Otley must stand or fall on his purchase. If the interest which was attempted to be sold, could not be sold under Symons's execution, of course Otley bought nothing. The question is one of power to sell an imperfect equity under an execution at law, and not whether Symons, by an appropriate proceeding in chancery, might not have subjected the rents, during the time Hill was in possession, to the payment of his mechanic's lien. *English* v. *Foote* was under the Act of 1838, this case under the Act of 1840; both explicitly deciding against the mechanic's right to sell where there is a prior incumbrance, and the occupant has no title to the premises. See, also, *Holmes* v. *Shands & Johnson*, 27 Miss. Rep. 43; *Shotwell & Mayrant* v. *Kilgore*, 26 Ib. 125.

Symons had notice that Hill was not the owner of the property, for the fact was recorded; and it was his own folly to make a contract with a person against whom his lien could not attach. And so did Otley when he purchased.

*Bell & Passmore* v. *Cooper*, 26 Miss. Rep. 651, is also a strong case for us. Suppose, before the completion of the title to Graves, Crary & Co., or that they had never acquired the title, the property had been sold under the execution in favor of Bell & Passmore, what interest would a purchaser at such sale have acquired? None whatever. Here Hill's title is buried under two trust deeds to secure the "purchase-money:" one from Hill, and one from his vendor, Malone — both unsatisfied and in full force, and both having precedence of the mechanic's lien. Now, in the light of these decisions, what interest, right or title did Otley buy under Symons's execution against Hill? The answer to this question settles the controversy. He bought nothing, and ought to take nothing by his suit.

The truth is, the legislature never intended to give mechanics advantages and privileges which would subvert the rights of other citizens; and if such had been the legislative intention, it had not the power to confer them. 8 S. & M. 760; 7 Ib. 372.

The case of *Laud & McGee* v. *Muirhead*, 31 Miss. Rep. 89, is not in conflict with the uniform decisions of this court; and, although relied on by opposing counsel, like all the other cases, it

is directly in our favor, sustains the position for which we are contending, and forbids a severance of the building from the land.

McGee was in possession of the land intended to be subjected, and at one time, verbally contracted to sell it to his co-defendant, Laud; but Laud failed to comply with his contract to pay for the land. McGee resumed possession, and still holds the land as his own. Under these facts, the court decided, that McGee was improperly made a defendant, and that his interest in the property could not be subjected to the mechanic's claim, on account of the building erected on the land. Compare *English* v. *Foote* and *Wheeler* v. *Hoover*, and the complaint is out of court. The title sought to be sold under Symons's execution, never was in Hill a single moment; we were not parties to those proceedings, and our rights are not affected by them.

The prayer of the bill betrays Otley's misgivings as to the exorbitance of his demands, and discloses the fact that he does not know what he purchased. He asks that he may be decreed to be a tenant in common with Haviland, Clark & Co., in the buildings and materials, and having gained this, that his tenancy may work downward from the building to the ground, and thus make him a tenant in common in the lot. His prayers taken together are, to get all if he can, and if he cannot, then half and nothing less, provided, the court shall be of opinion, that he is entitled as tenant in common of the premises to the extent of the interest which he purchased; then, that three commissioners be appointed to ascertain what that interest is, and to apportion the ground and building to him accordingly. Who ever heard of such a commission issuing out of chancery ? It seems to us to be a legal curiosity; and not only shows the propriety of the demurrer, but the conclusiveness of our position in regard to the invalidity of the sale by execution, of such an unknown interest as that possessed by Hill.

Has it ever been seriously contended before, that an intangible, obscure interest, which requires a search warrant in the hands of three skilful retrievers to find, was subject to seizure and sale under execution ? It must be a rare specimen of a judicial sale, when a special commission of three must be appointed to ascertain what was sold ! If there ever was a case, which fell entirely and completely

within the reason of the rule, which forbids the sale of mere uncertain and unascertained equities, it seems to us that this is the case.

What else could result from a sale under such circumstances, but the destruction and sacrifice of large and important equities to discharge a small demand? It is not surprising, that property worth six or seven thousand dollars, should, under such circumstances, sell for only two hundred. Will this court confirm the speculation by confirming such an unjust and oppressive procedure?

There is another difficulty. How will the commissioners proceed to ascertain the interest Otley bought? How can they ascertain Hill's interest in the building, and what was the extent of it? How will they ascertain Hill's interest in the lot? All this should have been done before the sale. It is too late now, and cannot help a void sale, even if the interest could be ascertained.

Winston sold to Malone, and took a trust deed from him to secure the purchase-money. This left an imperfect equity in Malone, which more than a year afterwards, and when his purchase-money was all unpaid, he sold to Green Hill, who, at the same moment, also executed a trust deed to secure his purchase-money. This would give Hill, when his trust deed was satisfied, Malone's imperfect equity. But, neither had paid his purchase-money; both trust deeds were unsatisfied, and in full force, when the mechanic's lien was created, and until long after the sale to Otley. Indeed, Hill has never perfected his title. At a cost of some seven thousand dollars, we have Winston's title, and Malone and Hill's equities; for the latter of which the property was sold by the trustee, and we became the purchasers.

The idea in the bill and brief of appellant about the rooms over Carrington, is purely arbitrary. Those rooms, as the court will see, were never released. Carrington's office was never bought by Otley, nor does the bill seek to subject it. The rooms above, stand in precisely the same condition as the other part of the house. This is so apparent, that we deem it unnecessary to say anything more on the point.

We conclude by saying, that, a mere possessory title in us, much more the one we have shown, would be sufficient to defeat this suit. Because in equity as well as at law, the plaintiff must recover on the strength of his own, and not on the weakness of his adversary's

title.   A complete equitable title must be shown in Otley.   8 S. & M. 265; 7 Wheat. 161.

HANDY, J., delivered the opinion of the court.

This bill was filed by the appellant to assert and enforce an equitable title to certain lots in the town of Columbus, and the buildings erected thereon.

It appears by the bill, that in the year 1846, one Winston conveyed the lots to one Malone, who executed a deed of trust to one Banks, as trustee, to secure the purchase-money; that on the 1st June, 1847, Malone conveyed the lots to one Hill, who executed a deed of trust to one Stewart, as trustee, to secure his purchase-money; that in March, 1848, Hill executed to one Symons a note for a sum of money due for lumber and materials furnished by contract of Symons to Hill for the erection of a building upon the lots; and in September, 1848, that suit was brought upon that note for the purpose of enforcing the statutory lien, and that judgment was rendered thereupon, subjecting the lots and the house erected thereon to the satisfaction of the debt, under which judgment the appellant purchased the premises at execution sale, in February, 1849; that on the 2d of May, 1848, Hill conveyed the premises to Stewart, as trustee, to secure a debt due to Haviland, Clark & Co.; that after the date of the contract of Hill and Symons in relation to the lumber and materials, Haviland, Clark & Co. paid Malone the amount due him upon the trust deed of Hill, and took an assignment of that deed; that before the sale of the property under the deeds of trust for the benefit of Malone, and of Haviland, Clark & Co., Otley tendered to Haviland, Clark & Co. the amount due on the deed of June 1st, 1847: and afterwards, that the lots and buildings were sold under both of the deeds of trust held by Haviland, Clark & Co., and were purchased for their benefit.

The bill tenders the amount paid by Haviland, Clark & Co. for the trust deed of Malone, and seeks the enforcement of the complainant's equitable title against the entire property, or against such part of it as he may be entitled to, and that the defendant's title be divested.

The appellees filed a demurrer to this, which was sustained, and the bill dismissed, and hence this appeal was taken.

The grounds of demurrer taken in the court below, and the errors insisted upon here, present two questions for consideration :

1. Whether the appellant acquired an equitable title both to the lots and the buildings, under his purchase at sheriff's sale, and in which he is entitled to protection upon paying the amount of the prior lien arising from the deed of trust to Malone.

2. Whether he did not acquire, by his purchase, a title to the buildings erected upon the lots.

1. It appears that, at the time of the appellant's purchase, the deed of trust of 1st June, 1847, was in full force, and unsatisfied. It was a *lien* upon the lots prior to that under which the appellant purchased ; and the money due upon it being unpaid, the property subject to it was not liable to sale under the execution to enforce the mechanic's lien. The rule is well settled in this court that, under such circumstances, no title either legal or equitable passed to the purchaser in virtue of the execution sale. *Boarman* v. *Catlett*, 13 S. & M. 149 ; *Wolfe* v. *Dowell*, Ib. 103 ; *Baldwin et al.* v. *Jenkins et al.* 23 Miss. 206. Hence, the appellant acquired no interest in the lots which he could recover by this bill ; and as to that part of the property in controversy, the bill was properly dismissed.

2. Did he acquire any right to the buildings erected upon the lots ?

The bill shows, that although the deed of trust for the benefit of Malone was outstanding and unsatisfied in March, 1848, when the *lien* for lumber and materials was created, yet that Hill, by its terms, was entitled to the possession until the premises should be sold under it, and that the sale did not take place until long afterwards. Whilst so in possession, the *lien* was created by contract with Hill ; and the question is, whether he had the right, by that contract, to create a *lien upon the buildings*, which could take precedence of the lien of the deed of trust then subsisting ; and this depends upon the provisions of the Act of 1840, Hutch. Code, 627, by which the rights of the parties under the proceeding are governed.

By the Act of 1838, Hutch. Code, 627, a *lien* for work and labor, or for materials furnished, in the building of any house, was authorized in favor of the workmen doing the work, or the person

furnishing the materials, in the construction of the house, to be en-
forced against the building, "in preference to any other *lien*, origi-
nating *subsequently to the commencement of said building*, or date
of the contract therefor." It was held by this court that, under
this statute, a building could not be subjected to this *lien* against a
prior *lien* by mortgage, which bound the land upon which the
building was erected; because the building was annexed to the free-
hold, and could not be severed from it; that the statute did not
extend the *lien* either to the land or to the building. *English* v.
*Foote*, 8 S. & M. 444.

But the Act of 1840 materially enlarges the right conferred by
this statute. It provides that, for such labor or materials furnished
upon any building, the party doing the work, or furnishing the
materials, "shall have a *lien*, to secure the payment of the same,
*upon the buildings and materials aforesaid;* and said buildings
and materials *shall not be subject to any other lien whatsoever*, until
the aforesaid lien shall have been cancelled."

Taking this in connection with the provision of the previous sta-
tute, it appears to be manifest that, *as to the buildings* erected by
the labor or materials of the party furnishing them, it was intended
to authorize a *lien* superior to any *lien* subsisting upon the land;
for the language is broad and pointed, "*said buildings and mate-
rials shall not be subject to any other lien whatsoever.*"

If there could be any doubt that it was intended to give such
*liens* precedence over all other liens upon the land, it would be re-
moved by the part of the statute immediately following this provi-
sion, that "in the event of there being no other lien in existence
*on such lot or parcel of ground, &c.*, then and in that case, the said
lot or parcel of ground, &c., to be equally subject to the payment
of said contract as in case of the house, building, &c., erected or
constructed thereon."

It is therefore manifest that the legislature had in view subsist-
ing liens upon the land, at the time of the contract in relation to
the building; that *as to the building*, it was intended to render the
*lien* paramount to all prior liens upon the land, and to extend the
*lien to the land* when there was no subsisting prior lien upon it.

It is insisted in behalf of the appellees, that the case of *Hoover*
v. *Wheeler*, 23 Miss. 314, settles the question that the building is

not liable to the *lien* when the land is bound by a prior *lien*. But the question does not appear to have been distinctly presented, or considered in that case. The nature of the mechanic's lien does not distinctly appear—whether founded upon a claim for labor or materials furnished in *erecting* a building, or in *repairing one already erected*—and the distinction between the lien upon the building, and that upon the land, with reference to the prior mortgage, is not considered. The case cannot, therefore, be considered as decisive of the question here presented.

The only remaining point to be considered is, whether the *lien* upon the buildings was created by a party competent to create it in order to give it validity under the statute.

It was made by Hill, the mortgagor in possession, who was entitled to hold possession until divested of it by sale. It does not appear whether the condition was broken or not; but his possession was in virtue of the deed, and he was in law the proprietor, having the right to discharge the mortgage and retain the property. He was, therefore, such a "proprietor" as is contemplated by the statute.

It follows from the foregoing views, that, upon the facts stated in the bill, the buildings and materials were subject to the *lien* under which the appellant purchased, and that he acquired a right to them in virtue of his purchase, but that he acquired no interest in the ground on which they were erected. The bill was, therefore, maintainable upon the facts stated, as to the buildings and materials; and the demurrer being to the whole bill, was improperly sustained.

As to the propriety of coming into equity to assert the appellant's right to the buildings and materials—it appears from the peculiar nature of the case, that no other court is competent to give adequate relief without injustice to the respective rights of the parties. The appellant being entitled to the buildings and materials, with the right to remove them from the ground, at the appellees being entitled to the ground, it is proper that a court of equity should direct how the appellants right to remove the buildings and materials should be exercised, so as to do no prejudice to the rights of the appellees as owners of the ground, and this could not be done by a court of law. It appears, therefore, to be a proper case for the interposition of a court of equity.

The decree is reversed, and demurrer overruled, so far as the relief

sought by the bill extends to the buildings and materials on the lots in the pleadings mentioned; and in that respect the cause is remanded, and the appellees required to answer the bill within sixty days.