EDWIN F. SHAW, and another,

*vs.*

EDGAR E. YOUNG, and others, and WINDSOR HOTEL.
GEORGE W. GETCHELL, and another, *vs.* SAME.

Penobscot.   Opinion March 4, 1895.

</div>

*Lien. Owner. Tenant. Consent. R. S., c. 91, § 30; Stats. 1868, c. 207; 1876, c. 1840.*

Courts will now construe statutes liberally that create a lien for repairs of buildings, when it is clear that the lien has been honestly earned and the lien claimant is within the statute.

The consent of the owner may be inferred for ordinary preservative repairs of buildings in possession of a tenant when it would not be inferred in cases of alterations, remodelings, additions, or extensive repairs.

The statute lien for labor and materials furnished for the repairs of a building is not limited to the estate of the tenant making the repairs, but attaches to the fee, the *res*, if the consent of the owner is shown.

The consent of the owner may be shown by circumstances. When the owners of a hotel lease it to a tenant to be used as a hotel, and make no objection to necessary preservative repairs put on by him, their consent thereto may be inferred.

ON REPORT.

These were two actions to enforce lien claims upon the Windsor Hotel, in Bangor, and were tried together. The law court was to render such judgment, upon so much of the evidence as was admissible and competent, as the legal rights of the parties required.

The necessary facts are stated in the opinion.

*T. W. Vose*, for plaintiffs.

The defendants in their brief statement admit that Chase assigned to Pickard without the consent of the owners, and that Pickard assigned to the Youngs without the owners' consent. This leaves the Youngs in possession, so far as these plaintiffs are concerned, as agents of Chase and not lessees.

In *Morse* v. *Dole*, 73 Maine, 351, this court held that a lien would attach as against a mortgagee if the labor was performed or materials were furnished by his consent.

Counsel cited: *Parker* v. *Bell*, 7 Gray, 429; *Nellis* v. *Bellinger*, 13 N. Y. 560: *Otis* v. *Dodd*, 90 N. Y. 336, and cases there cited; *Paine* v. *Tillinghast*, 52 Conn. 532; also cases cited in Phillips on Mechanics' Liens, page 134, 3rd Ed.

*Jasper Hutchings*, for devisees of Brown, and *C. P. Stetson*, for Chase.

The "owner" within the meaning of the statute is a lessee, or sub-lessee in this case, and not the owners of the fee. *Francis* v. *Sayles*, 101 Mass. 435. The statute means by "consent" something more than knowledge. The two words are by no means necessarily or usually synonymous. A man may know without consenting. Consent ordinarily, in business and law, implies that the person giving it has some power of control over the thing consented to. How can a man be said to give consent in matters of business who has no power of dissent? Brown could not prevent these repairs if he would. He has received no benefit from them.

If it be claimed that joining in a lease to Chase, which empowered and required him to make repairs, or anything that Brown said or did, was a consenting within the meaning of the statute, it is well answered by the case of *Hayes* v. *Fessenden*,

106 Mass. 228. Counsel also cited: *Bliss* v. *Patten*, 5 R. I. 376, 380; *Conant* v. *Brackett*, 112 Mass. 18. It is a general rule that a person who has received the benefit of the money or property of another is not liable to such person therefor, in the absence of a contract between the parties, if there be any ground upon which the money, or property or its benefit, may be rightfully retained by the possessor without accounting to the owner. *Arey* v. *Hall*, 81 Maine, 20, 21.

SITTING: PETERS, C. J., EMERY, FOSTER, WHITEHOUSE, WISWELL, JJ.

EMERY, J.   The property in Bangor known as the "Windsor Hotel" consists of a lot of land and buildings thereon constructed and fitted for the hotel business. It has been used exclusively for that business for many years. The owners all lived in Bangor at the beginning of the repairs which are the subject matter of these suits. Horace W. Chase owned one-half of the property, and seems to have been the managing owner. He leased the property to Asa R. Pickard for the term of seven years from December 1, 1887. In the lease it was provided that the lessor should make the necessary outside repairs and the lessee the necessary inside repairs.

Ricker and Brown owning three-tenths of the property leased their interest to Chase for the term of five years from March 31, 1891. In this lease it was provided that Chase should make all the repairs at his own cost. No other lease of any part of the property is in evidence.

Pickard assigned his lease to Mr. Young, July 3, 1891, with the consent of Mr. Chase. At this time the hotel building needed repairs inside and out, repairs necessary for the preservation of the building and repairs necessary to keep up its earning powers as a hotel, and keep it up to the essential modern conditions. The matter of these repairs was talked over between Chase and Young at the time of the transfer of the lease, and it was understood that Young was to have the necessary repairs made inside and out. Mr. Young at once set about the repairs and employed among others these plaintiffs to furnish labor and materials therefor.

During part of the time while these repairs were being made, and the labor and materials therefor were being furnished by these plaintiffs, Mr. Chase and Mr. Brown were boarding at the hotel and saw much of what was being done. They made inquiries, and advised more or less with the workmen about the work. They made no objection to anything. The other owners (Chase and Brown owning seven-tenths) do not appear to have seen or known of the repairs except so far as can be inferred from their residence in Bangor. That the repairs, so far as these plaintiffs made them, were reasonably necessary for the buildings and the business, is not questioned.

Mr. Young becoming insolvent these plaintiffs naturally claim liens on the property for their labor and materials furnished as above. The owners of the fee appear and make two contentions. 1st, that the liens, if any, do not attach to the fee, but only to the estate of Mr. Young, the tenant in possession; 2nd, that the "consent" of such owners does not appear. If either contention is sustained, the owners of the fee escape the liens.

In determining the proper interpretation of lien statutes at this time, courts need not feel hampered by the earlier decisions. These statutes were such an innovation upon the common law of real property that for some time the courts construed them most strictly. To this day there are no such statutes in England. In this country, however, they are now general and familiar and their equity and beneficence are conceded even by land owners. Courts will now construe them liberally to further their equity and efficacy when it is clear that the lien has been honestly earned, and the lien claimant is within the statute.

I. Our statute (R. S., c. 91, § 30) expressly declares that the lien is on the building and on the land on which it stands, and on any interest which the owner of the building has in the land. Nothing is said of the owner's interest in the building. The building itself is declared to be the basis of the lien. In this case the owners of the building are the owners in fee of the land; so that the building and the land are united in ownership.

We think it was the intent to attach the lien to the building, and to the land united to the building, to the *res*, rather than to any particular estate in the building. Assuming that the legislature intended to make the lien effectual when earned, this construction is natural. The particular estate of the tenant in possession may be small and worth much less than the labor and materials put upon the building. The benefit to that estate may be trifling. The benefit to the building itself, the fee, may be large. The statute should be construed as making the lien co-extensive with the benefit. Its equity is thus given scope. The rules and principles of equity are now to prevail. Statutes 1893, c. 217, § 8.

This interpretation of the lien statute does not conflict with the rule that the lien does not attach to a prior mortgagee's interest. The claim of one who furnishes labor and materials is a lien only, but it fastens to the property and may be inferior or superior to the mortgagee's lien according to circumstances. *Morse* v. *Dole*, 73 Maine, 357.

Counsel have cited decisions of courts of other states in which the word " owner " in similar statutes is held to be limited to the tenant in possession, having an estate. For reasons above given, we do not think such a limitation exists in our statute.

II. But no owner's estate in the property, whether in fee, for life, or for a term of years, can be affected by the statute lien unless the labor and material were furnished " by the consent of the owner." Does the " consent " of the owners of the fee in this case sufficiently appear?

The owners fitted the property for the hotel business. Their revenue from it had come and was to come from its use as a hotel. It could not be used for any other business without radical and expensive alterations. Its revenues as a hotel could not be kept up without such frequent repairs and improvements as would attract and retain custom. Its proper preservation as a going hotel required that it be kept in good and modern repair and efficiency. Its owners intrusted the hotel to one of their number, Chase, (who was also the largest owner) as managing owner presumably with the knowledge that

repairs must often be made. Chase placed the hotel in the possession of Young with the understanding that he should make repairs. Did not the owners thereby " consent" that repairs should be made?

Chase and Brown, the majority owners (and one of them the managing owner,) saw the repairs going on, and more or less directed and approved them. The other owners seem to have left the whole care of the property to Chase. Did not the owners thereby " consent" that these particular repairs should be made and their labor and materials furnished?

The meaning of the word " consent" in the statute is now modified by other parts of the statute enacted since that word was first used. Prior to 1868 a lien would attach only when the labor and material were furnished " by virtue of a contract with the owner." In the statute of 1868, (ch. 207,) it was enacted that a lien should attach if the labor or materials were furnished " by the consent of the owner." It was provided in section 2 of that statute that such consent should not be inferred unless notice was first given to the owner that a lien would be claimed. This was to give the owner an opportunity to express in writing his dissent. If, upon being notified of the intent to claim a lien, the owner did not express his dissent in writing, his consent could be inferred.

In the statute of 1876, c. 140, (now R. S., c. 91, § 31,) the requirement of notice to the owner was stricken out, but the provision of written notice of dissent by the owner was retained. The " consent" can now be inferred without any notice to the owner.

We think this change in the statute materially modifies the meaning of the word " consent" in favor of the lien claimant. It seems to be assumed by the legislature that the owner of real · estate will be vigilant in caring for it either in person, or by agents ;—that if he leaves it in the possession of agents, or tenants, knowing that repairs are necessary to be made from time to time, and makes no provision for them, but leaves them to be made by agents or tenants, and gives no notice of dissent, his consent may be inferred so far as the lien claimants are concerned.

We are satisfied from the facts in this case that the statute consent of the owners sufficiently appears.

This decision, however, should not be extended beyond the facts in this particular case. Consent may be inferred for ordinary preservative repairs, when it would not be inferred for alterations, remodelings, additions, or even more extensive repairs. The consent must be shown, and whether it appears in any given case will depend wholly upon the facts in that case.

> *Defendants to be defaulted. Judgment against the property in favor of the plaintiffs with interest from date of writs, and costs from the time of the appearance of the owners.*