In Equity.

SAMUEL N. YORK et al. *vs.* L. D. MATHIS et als.

Penobscot.   Opinion September 16, 1907.

*Equity.   Decrees.   Liens on Buildings.   Repairs.   "Consent" of Owner.
Corporations.   Authority of Directors.   R. S., chapter 93,
sections 29, 30, 31, 33, 36.*

The statute gives a lien to persons performing labor or furnishing materials
in erecting or repairing any building " by virtue of a contract with or by ·
consent of the owner," and provides that "if the labor or materials were
not furnished by a contract with the owner," he may prevent such lien by
giving written notice that he will not be responsible therefor.

A building known as the Auditorium owned by the Eastern Maine Musical
Association was occupied by the defendant Mathis under a written lease
providing that the premises were " to be used as a skating rink," and the
plaintiffs by virtue of a contract with the tenant Mathis furnished mate-

rials and performed labor in relaying a portion of the floor which was found to be in an unsuitable condition for skating.

In a proceeding in equity to enforce their lien on the building, in which the plaintiffs contended that the work was done by them by consent of the corporation known as the Eastern Maine Musical Association, the owner of the building, it appeared that the new section of floor was laid with the intention of making it a permanent improvement to the building as well as a convenience to the tenant ; that it would have been of no value for removal by Mathis during his tenancy, and was not in fact removed by him, and that the building with the floor thus repaired, continued to be used as a skating rink after he surrendered possession. It also appeared that Mr. Beal, the president of the Association, was present in the building the next day after the plaintiffs commenced the repairs, and had knowledge of the undertaking before the old boards had all been taken up and before any part of the new floor had been laid or the materials therefor had been furnished ; that he made comments upon the work, but expressed no dissent or dissatisfaction, and gave no notice to the plaintiffs that the Association would not be responsible for the repairs. It further appears that in a suit brought in the name of the Association against Mathis to recover arrears of rent, Mr. Beal gave credit for $150 as an "allowance on floor."

HELD :

1. That the decree entered by a single Justice, in accordance with the advisory verdict of the jury, sustaining the plaintiffs' lien, was not shown by the appellants to be clearly erroneous, and must be affirmed.

2. That while the consent required by the statute to constitute the foundation of a lien must be something more than a mere acquiescence in the act of a tenant who for his own convenience makes temporary erections and additions which he has a right to remove during his tenancy, yet if the owner of the building has knowledge that certain repairs are necessary and makes no provision for them, but is present when they are being made by his tenant and gives no notice that he will not be responsible therefor, his consent may be inferred from his conduct considered in connection with all the circumstances of the case.

3. That it is competent for a board of directors to establish a mutual understanding that one of their number shall be the active agent of the board in the management of the property and the conduct of the business affairs of the corporation ; and that it is not indispensable that such an understanding should be created by a formal vote or proved by a formal record, but that it may be inferred from the situation and conduct of the parties.

4. That it was not error on the part of the jury and the presiding Justice to draw the inference that Mr. Beal had acquired the authority to "bind the corporation by the habit of acting with the assent and acquiescence of the board of directors, and to find that the repairs were made "by consent of the owner," given through Mr. Beal its authorized agent, within the meaning of the statute.

In equity.    On appeal by one defendant.    Appeal dismissed. Decree below affirmed.

Bill in equity brought by the plaintiffs, "Samuel N. York of Brewer in the county of Penobscot, State of Maine and Charles F. Foster of Bangor in said County, co-partners in business under the name of Foster & York," against "L. D. Mathis of Portland in the County of Cumberland, in said State, and The Eastern Maine Musical Association, a corporation duly created by law, and having its place of business at said Bangor, and the Eastern Trust & Banking Company, a corporation duly created by law, and having its place of business at said Bangor," to enforce the plaintiffs' lien claim upon the Auditorium Building, so called, in said Bangor and the leasehold interest in the land upon which it stands, owned by the said Eastern Maine Musical Association, for materials furnished and labor performed by the plaintiffs in relaying a part of the floor in said Auditorium Building during the occupancy of the defendant Mathis who held under a written lease from the said Musical Association for the term of ten months beginning May 20, 1905, for a rental of $1500.    This lease expressly provided that the premises were "to be used as a skating rink."

The Eastern Maine Musical Association, one of the defendants, duly filed its answer to the bill.    The other defendants, Mathis and the Eastern Trust & Banking Company, did not answer and the bill was taken pro confesso as to Mathis and by consent was dismissed as to the Eastern Trust & Banking Company.

The cause came on for hearing at the January term, 1907, of the Supreme Judicial Court, Penobscot County.    By the request of the plaintiffs, set forth in the bill, a jury trial was had as provided by Revised Statutes, chapter 93, section 36.    Before proceeding with the trial, the following admissions were made:

"It is admitted that the amount due at the time the bill was filed was five hundred dollars."

"It is also admitted that the necessary preliminary steps to enforce a lien were taken."

Counsel for the Eastern Maine Musical Association also stated as follows:    "The only point we make is that the property is not sub-

jected to the lien, never was any lien, but we do not propose to raise any question as to the amount due or as to the preliminary steps taken to enforce the lien and that they were seasonably filed and sufficient in form. The only question at issue is, whether the work was done with consent."

The jury returned a verdict that the plaintiffs had a lien upon the building and leasehold interest in land of the Eastern Maine Musical Association described in the bill, "as alleged by them." .

The presiding Justice then made and filed the following decree:

"This cause came on to be heard at the January term, 1907, upon bill, answer, admissions of record and proof. The bill was taken pro confesso as to L. D. Mathis, and it was duly dismissed as to the Eastern Trust and Banking Company. In the bill, the plaintiffs claimed a lien upon the property described in the bill for the sum of five hundred dollars and interest thereon from the date of the bill, namely December 7, 1905, and costs. Upon request of the plaintiffs, as set forth in said bill, the Court determined the amount for which the plaintiffs have a lien upon said property described in the bill by a jury trial, as provided by Revised Statutes, by submitting to the jury the question, the form of which was duly assented to by counsel for plaintiffs and by counsel for the Eastern Maine Musical Association, as follows:

"'Have the plaintiffs a lien upon the building and leasehold interest in land of the Eastern Maine Musical Association described in the bill, as alleged by them?'

"To which said question the jury answered: 'Yes.'

"Therefore, upon consideration thereof, it is ordered, adjudged, and decreed as follows, viz: That the bill in this case be sustained with costs taxed at seventy dollars and seventeen cents, and that the plaintiffs recover of the said L. D. Mathis the sum of five hundred dollars, together with interest from the date of filing said bill, to wit, thirty-two dollars and fifty cents, in all amounting to five hundred and thirty-two dollars and fifty cents, together with costs amounting to seventy & 17-100 dollars and in pursuance of said finding of the jury the Court determines that the plaintiffs have

a lien upon the property described in said bill, to wit: the building known as the Auditorium building, and all the leasehold interest that said Eastern Maine Musical Association has in the land upon which the same stands, as said building and said leasehold interest in the land are particularly described in said bill for said amount of five hundred and thirty-two dollars and fifty cents, and costs amounting to seventy and 17-100 dollars, in all amounting to the sum of six hundred and two and 67-100 dollars; and the Court also decrees that all said property, to wit, said Auditorium Building, described in said bill, and all the leasehold interest that said Eastern Maine Musical Association, has in the land upon which said building stands, as said building and said leasehold interest and said land are particularly described in said bill shall be sold by public auction to the highest bidder therefor at the Law Office of Charles A. Bailey, Esq., being office No. 15 in the Columbia Building, on Columbia Street in said Bangor, in said County of Penobscot, on Thursday, the twenty-first day of March, A. D. nineteen hundred and seven, at ten o'clock in the forenoon, and said Charles A. Bailey, Esq., of said Bangor is hereby appointed an officer of this Court to make said sale, he, the said Charles A. Bailey, first giving notice of the time, place, and manner of said sale, by publishing notice thereof in the Bangor Daily Commercial, for three weeks successively previous to said sale, the first publication to be at least thirty days before said sale, the said plaintiffs to have equal privileges with other persons to be bidders at said sale, and to become purchasers thereat, the proceeds of said sale after payment of all expenses thereof, including said Charles A. Bailey's fees and commissions, shall be applied to the satisfaction of the amount of said plaintiff's claim and costs as above particularly specified; and the balance, if any remaining, shall be returned into Court for the benefit of such person or persons, party or corporation, as the Court shall determine, are legally or equitably entitled thereto, and the deed of said Charles A. Bailey in his said capacity as said officer of the Court, conveying said building and said leasehold interest in said land, to the purchaser at said auction sale, to be recorded in the Registry of Deeds in said Penobscot

County, within three months after the sale, shall convey all the title of said Eastern Maine Musical Association in said Auditorium Building and in said leasehold interest in said land. The said Eastern Maine Musical Association, or any other person or persons, party or corporation, who may be the owners of said property, namely, said building and said leasehold interest in said land, to have the right to redeem from said auction sale to be made by said Charles A. Bailey at any time within sixty days from the day of sale. And a commission shall duly issue out of this Court to said Charles A. Bailey giving him authority in the premises as aforedescribed; and if this decree and determination shall be appealed from, then upon final decree, if a sale shall be ordered to be made, the Court will again fix the time, place, and manner of sale, or make any other modifications in this decree that law and equity shall require."

This decree was drawn under the provisions of Revised Statutes, chapter 93, section 37. From this decree the Eastern Maine Musical Association duly appealed to the Law Court as provided by Revised Statutes, chapter 79, section 22.

All the material facts appear in the opinion.

*F. A. Floyd and Matthew Laughlin*, for plaintiffs.

*Fred V. Matthews*, for L. D. Mathis.

*E. C. Ryder*, for Eastern Maine Musical Association.

*C. A. Bailey*, for Eastern Trust & Banking Company.

SITTING: EMERY, C. J., WHITEHOUSE, PEABODY, SPEAR, CORNISH, JJ.

WHITEHOUSE, J. This is a bill in equity to enforce the plaintiff's lien claim upon the Auditorium Building in Bangor and the leasehold interest in the land upon which it stands, owned by the Eastern Maine Musical Association, for materials furnished and labor performed by the plaintiffs in relaying a part of the floor during the occupancy of the defendant Mathis, who held under a written lease from the Musical Association for the term of ten months beginning May 20, 1905, for a rental of $1500. This

lease expressly provided that the premises were "to be used as a skating rink."

The following provisions are found in chapter ninety-three of the Revised Statutes relating to mechanics' liens.

Section 29. "Whoever performs labor or furnishes labor or materials in erecting, altering, moving or repairing a house, building or appurtenances, or in constructing, altering or repairing a wharf, or pier, or any building thereon, by virtue of a contract with or by consent of the owner, has a lien thereon, and on the land on which it stands and on any interest such owner has in the same, to secure payment thereof, with costs."

Section 30. "If the labor or materials were not furnished by a contract with the owner of the property affected, the owner may prevent such lien for labor or materials not then performed or furnished by giving written notice to the person performing or furnishing the same, that he will not be responsible therefor."

Section 31, as amended by Public Laws, 1905, chapter 110. "The lien mentioned in the preceding section shall be dissolved unless the claimant within sixty days after he ceases to labor or furnish materials as aforesaid, files in the office of the clerk of the town in which such building, wharf or pier is situated, a true statement of the amount due him, with all just credits given, together with a description of the property intended to be covered by the lien, sufficiently accurate to identify it, and the names of the owners, if known; which shall be subscribed and sworn to by the person claiming the lien, or by some one in his behalf, and recorded in a book kept for that purpose."

Section 33 provides that such liens may be preserved and enforced by bill in equity against the debtor and owner of the property affected, filed within ninety days after the last of the labor is performed or labor or materials are so furnished. Section 36 reads as follows: " The court shall determine the amount for which each lienor has a lien upon the property, by jury trial, if either party so requests in bill, petition or answer; otherwise in such manner as the court shall direct. And such determination shall be conclusive

as so the fact and amount of the lien subject to appeal and exceptions according to the practice in equity."

In this proceeding, it appears that the plaintiffs contracted with the defendant Mathis to furnish the labor and materials necessary to relay a section of the floor of the Auditorium for the sum of $500, and it is not in controversy that the plaintiffs performed the contract on their part and became entitled to recover the contract price of $500. It is also unquestioned that the plaintiffs fully complied with the statutory provisions above quoted respecting the procedure for the enforcement of the lien. The plaintiffs do not claim, however, that the work was done by virtue of a contract with the owner of the building, but they insist that they have complied with the alternative requirement of the statute by proving that it was done by consent of the Musical Association, the owner of the Auditorium and of a leasehold interest in the land on which it stands. This is denied by the defendant, and thus at the trial the only issue between the parties was whether the improvement in question was made by "consent" of the owner of the property in the sense in which that term is employed in the statute. At the request of the plaintiffs this issue was submitted to the jury in accordance with the provisions of the statute above quoted, authorizing the court to determine by jury trial "the amount for which each lienor has a lien on the property." In their bill the plaintiffs claimed a lien for the contract price of $500, and the jury found that the plaintiffs had a lien upon the property described in the bill "as alleged by them." Thereupon, in consideration of this advisory verdict, and of the evidence upon which it was based, the presiding Justice entered a decree that the plaintiffs recover against the defendant Mathis, as to whom the bill was taken pro confesso, the sum of $500 with interest and costs, and have a lien therefor on the property described in the bill owned by the Eastern Maine Musical Association.

The question now presented for the determination of the Law Court is whether this decision of the presiding Justice upon the matters of fact involved in the question of the owner's consent to the repairs made by the plaintiffs at the request of the tenant, is shown

to be clearly wrong. If not, the decision should be affirmed and the appeal dismissed; and the burden of showing it to be clearly erroneous falls upon the appellant. *Herlihy* v. *Coney*, 99 Maine, 471; *Redman* v. *Hurley*, 89 Maine, 428; *Berry* v. *Berry*, 84 Maine, 544; *Jameson* v. *Emerson*, 82 Maine, 359.

In *Shaw* v. *Young*, 87 Maine, 271, the question of the proper significance and force to be given to the word "consent" in this statute was critically considered by the court in the light of the history of our legislation upon this subject in recent years. It was provided by the Statute of 1868 that such consent should not be inferred unless notice was first given to the owner that a lien would be claimed; but this requirement of notice was stricken out by the Act of 1876, and the provision for a written notice of dissent by the owner retained. Since that time the "consent" could be inferred without any notice to the owner. In the opinion the court say: "We think this change in the statute materially modifies the meaning of the word "consent" in favor of the lien claimant. It seems to be assumed by the legislature that the owner of real estate will be vigilant in caring for it either in person, or by agents;—that if he leaves it in the possession of agents, or tenants, knowing that repairs are necessary to be made from time to time, and makes no provision for them, but leaves them to be made by agents or tenants, and gives no notice of dissent, his consent may be inferred so far as the lien claimants are concerned.

We are satisfied from the facts in this case that the statute consent of the owners sufficiently appears.

This decision, however, should not be extended beyond the facts in this particular case. Consent may be inferred for ordinary preservative repairs, when it would not be inferred for alterations, remodelings, additions, or even more extensive repairs. The consent must be shown, and whether it appears in any given case will depend wholly upon the facts in that case."

In that case the repairs in question were found to be " necessary for the preservation of the building and necessary to keep up its earning powers as a hotel and keep it up to the essential modern conditions."

It is undoubtedly true that the consent required by the statute to constitute the foundation for a lien must be something more than a mere acquiescence in the act of a tenant who for his own convenience makes temporary erections and additions which he has a right to remove before the expiration of his tenancy. Jones on Liens, Sec. 1253. *Hanson* v. *News Publishing Co.*, 97 Maine, 99. In that case the question related to certain partitions erected by the Publishing Company as lessor, in a store under the Falmouth Hotel. They were so constructed that they could be removed without injury to the building and were in fact removed by the company. In the opinion the court say : " The fact that Mr. Brown knew the lessees were putting in the partitions, which were of no service to him or to the store, and to which he had no right to object consistently with the rights of the lessee, does not authorize the inference that he consented, in the sense of the statute. *Huntley* v. *Holt,* 58 Conn. 445 ; 9 L. R. A. 111 ; *Francis* v. *Sayles,* 101 Mass. 435.

In *Huntley* v. *Holt,* the court thus define the term " consent " as used in the Connecticut statute : " When the statute uses the word, ' by the consent of the owner of the land,' it means that the person rendering the service or furnishing the materials and the owner of the land on which the building stands must be of one mind in respect to it. The words ' consent of the owner,' are used in the statute as something different from an agreement with the owner ; and while it may be urged that they do not require such a meeting of the minds of the parties as would be essential to the making of a contract, there must be enough of a meeting of their minds to make it fairly apparent that they intended the same thing in the same sense."

But after the analogy of implied contracts or agreements inferred from the conduct of parties and the circumstances of the case, if one furnishes labor and materials for making permanent repairs on a building, in the belief that the owner has given his consent thereto and in the expectation that he will have a lien therefor on the building and the conduct of the owner, viewed in the light of all the circumstances, justified such expectation and belief, the basis of a lien is thereby established as effectually as by a mutual under-

standing between the parties to that effect. *Saunders* v. *Saunders*, 90 Maine, 284.

If the owner of a building induces another to furnish labor and materials for such permanent improvements upon his property, by conduct and declarations which create the appearance of an unqualified consent thereto on his part, the owner is estopped to deny the existence of such consent in reality, for the reason that he has so conducted himself that it would be contrary to equity and good conscience for him to assert rights which might perhaps, have otherwise existed, as against another who has in good faith relied upon such conduct and been thereby induced to act to his detriment. And under such circumstances it would not be necessary that the original conduct creating the estoppel should be characterized by an actual intention to mislead and deceive. *Martin* v. *Maine Central R. R. Co.*, 83 Maine, 100 ; *Rogers* v. *Portland & Brunswick St. Ry.*, 100 Maine, 86.

In the case at bar it has been seen that the owner of the building in question is the Eastern Maine Musical Association, and the records fail to disclose any vote of that corporation or of its board of directors, expressly authorizing any officer or agent of the Association to give its consent to the repairs in controversy. Nor is there any direct evidence that any officer or agent of the Association ever expressly consented to such repairs. But it is claimed by the plaintiffs that F. O. Beal, the president of the board of directors was in fact entrusted by his associates with the entire management and control of the Auditorium and of the affairs of the Association, and that he was held out to the plaintiffs as one clothed with full authority to represent the Association ; and they further contend that his conduct in the premises, considered with reference to the situation of the parties the use to which the building was to be devoted by the defendant Mathis, the condition of the floor of the building, and all the circumstances warranted the inference that he had given an unqualified consent to the repairs as a permanent improvement to the building.

The work in question was done by the plaintiffs between the 5th and the 11th of September 1905, and it does not appear that any

meeting of the Association, for the election of officers, was held after November 1903, until November 1905. But it appears that Mr. Beal had been elected a director at every meeting held for the election of officers from 1901 to 1907, that he was also elected president of the board at every election held for that purpose, that he continuously acted as president and director every year, that he appeared to be entrusted with the care and control of the affairs of the Association, and that no other officer or agent took any active part in its management. President Beal was one of the officials who executed the lease to the defendant Mathis, and personally kept the account with Mathis. He was present in the Auditorium on the second day of the work of laying the floor in question, observed the workmen, inspected the work as it progressed, and, in the presence of the plaintiff York, made comments upon it but expressed no dissent or dissatisfaction. One of the workmen also saw Mr. Beal in the Auditorium inspecting the floor on one occasion during the progress of the work.

October 31, 1905, Mathis having failed to meet his monthly payments of rent, Mr. Beal employed an attorney to commence a suit in the name of the Association to collect the amount due and after coming into the attorney's office prepared a statement of the account to be annexed to the writ, containing a credit of $450 cash, "an allowance on floor of $150" and "allowance for fair and festival $92." By virtue of this writ eight boxes of roller skates were attached in Bangor as the property of the defendant Mathis.

. After Mathis surrendered possession of the building, Mr. Beal employed the same attorney to make a lease of it to another tenant who also occupied it as a skating rink during the year following. At the trial of this cause Mr. Beal was present in the court room but did not testify as a witness.

At a meeting of the directors held January 24, 1906, a vote was passed authorizing the president, Mr. Beal, to execute a bond in the sum of $400, in behalf of the Association, to indemnify the deputy sheriff for making the attachment on the writ above described in favor of the Association and against Mathis.

A corporation must act and speak through its officers and author-

ized agents and it is entirely competent for a board of directors to establish a mutual understanding that one of their number shall be the active agent of the board in the management of the property and the conduct of the business affairs of the corporation. It is not necessary that such an understanding should be created by a formal vote passed at a formal meeting or proved by a formal record. It may be inferred from the situation and conduct of the parties. A director " may acquire the power to bind the corporation by the habit of acting with the assent and acquiescence of the board," and so his unauthorized acts may be confirmed by the approbation and acquiescence of the board." It is true that in either case it is the board that acts or acquiesces and not the directors as individuals, but subsequent ratification as well as previous authority or acquiescence may be shown by circumstances and conduct. *Pierce* v. *Morse-Oliver Co.*, 94 Maine, 409, and authorities cited; *Fitch* v. *Steam Mill Co.*, 80 Maine, 34; *Murray* v. *Nelson Lumber Co.*, 143 Mass. 250. "Authority in the agent of a corporation may be inferred from the conduct of its officers, or from their knowledge and neglect to make objection, as well as in the case of individuals. R. S., ch. 47, sect. 68. *Sherman* v. *Fitch*, 98 Mass. 64.

It has been seen that though present in court at the trial, Mr. Beal did not appear as a witness to disclaim the authority ascribed to him as the active agent of the Association, and when all of the evidence relating to that branch of the case is examined in the light of the familiar principles of law above stated, it cannot be said that there was manifest error on the part of the jury and the presiding Justice in drawing the inference that Mr. Beal had acquired the authority to "bind the corporation by the habit of acting with the assent and acquiescence" of the board of directors.

It is also the opinion of the court that it cannot reasonably be deemed "clearly erroneous" to hold that the labor and materials were furnished by the plaintiffs "by consent of the owner" given through Mr. Beal, its authorized agent, within the meaning of the statute.

The owner of the Auditorium leased it to the defendant Mathis to be used as a skating rink at the large rental of $150 per month,

with a reservation of the right to use it for its annual musical festival, and the annual exhibition of the State Fair, but without the right of renewal on the part of the lessee.   Under such a lease it is not unreasonable to suppose that Mathis entered into the occupancy of the building in the expectation that the floor was in a suitable condition for use as a skating rink during the term of the lease ; but a brief experience in the use of it developed the fact that parts of the floor had become warped and wavy, and at the ends of the hall where the skating was across the grain of the boards the floor had soon become so rough and uneven that it was no longer suitable or safe to be used as a skating rink.   Indeed it satisfactorily appears from undisputed testimony that early in August the floor was unsuitable either for skating or dancing.   As neither Mathis nor Beal testified as a witness, there is no direct evidence of the arrangement between them respecting the repairs.   It appears, however, that the negotiations resulting in the contract between Mathis and the plaintiffs commenced August 20, 1905, and between the 5th and 11th of September, a strip of the old floor 15 feet in width at the sides and 20 feet in width at the ends of the hall was taken up and a new floor laid in its place octagonal in form so that the roller skates would follow the grain of the boards entirely around the hall.   Thus repaired, the floor was suitable ·either for skating or dancing.   This new section of the floor was obviously laid with the intention of making it a permanent improvement to the building as well as a convenience to the occupant at that time.   It would have been of no value for removal by Mathis during his tenancy. It could not legally have been removed and was not in fact removed by him, and as already noted, the building has continued to be used as a skating rink since he surrendered possession.

Again an inspection of the account for rent on which suit was brought by Mr. Beal for the Association October 31, 1905, shows that all of the cash payments made by Mathis aggregated $450, being the amount of the rent for three months ending August 20. It was not an unreasonable inference from this fact that after the contract for the new floor was made with the plaintiff, Mathis ceased to pay rent by reason of an understanding with Mr. Beal at

that time that an allowance was to be made on account of the new floor. Under the terms of the lease there was an existing arrearage of $150 of rent at the time the floor was laid. The lease had then but little more than six months to run with no right of renewal, and it is wholly improbable that under these circumstances Mathis would have assumed the burden of expending $500 in making repairs. In fact a credit of $150 was given by Mr. Beal in the account sued, as an "allowance on floor." This was $50 per month from the time the contract was made, and the probability that the whole amount was to be assumed by the Association and deducted from the rent at the rate of $50 per month, is much greater than the probability that the whole amount was to be paid by Mathis. The presence of Mr. Beal on the floor inspecting the work the next day after it began, strengthens the inference that an understanding existed between the lessor and lessee in relation to these repairs before they were made. Mr. Beal had positive knowledge of the undertaking before the old boards had all been taken up and before any part of the new floor was laid or the materials furnished, but did not seek to avail himself of the provisions of the statute above quoted authorizing him to prevent the lien by giving written notice to the plaintiffs that the Association would not be responsible for the repairs.

Furthermore Mr. Beal was present at the trial, heard all of the plaintiffs' evidence and the contention of counsel based upon it, but declined to testify as a witness in behalf of the defendant Association. All the facts relating to the controverted question of the owner's consent to the repairs were peculiarly within his knowledge and he could have supplied positive evidence of what must otherwise be left to inference. The object of the trial was to discover and declare the truth in relation to that question, and he had an opportunity to render aid of vital importance in the promotion of that object. As observed by this court in *Union Bank* v. *Stone*, 50 Maine, 599, "The defendant does not offer his own testimony. He prefers the adverse inferences which he cannot but perceive may be drawn therefrom to any statements he could truly give, or to any explanations he might make. He prefers any inference to giv-

ing his testimony. Why? Because no inferences can be more adverse than would be the testimony he would be obliged by the truth to give." See also 1 Wigmore on Evidence, sections 289, 290, and cases cited.

The plaintiffs had no information respecting the precise nature of the arrangement between the lessor and lessee in regard to these repairs, and if Mr. Beal consented to the improvement or by his conduct and declaration interpreted in the light of all the circumstances, justified the plaintiffs in believing that he had consented and they furnished the labor and materials in good faith in that belief, it is immaterial by what private agreement between Mathis and himself Beal was induced to give his consent or so to conduct himself as to indicate consent.

It is accordingly the opinion of the court that the entry must be

*Appeal dismissed.*

*Decree below affirmed, with additional costs.*