ALLIS-CHALMERS CO. v. CENTRAL TRUST CO. OF NEW YORK.

MULLEN et. al. v. SAME.

(Circuit Court of Appeals, First Circuit. September 22, 1911.)

Nos. 923, 924.

1. MECHANICS' LIENS (§ 57*)—CONSTRUCTION OF STATUTE—"OWNER" OF PROPERTY—MORTGAGEE OUT OF POSSESSION.

A mortgagee not in possession is not an "owner" within the meaning of the Maine mechanic's lien statute (Rev. St. Me. c. 93, § 29), which gives a lien for labor or materials only when they are furnished "by virtue of a contract with or by consent of the owner," and he is not required to serve notice of his dissent where he has knowledge that improvements are being made on the property, as is required of the owner, in order to prevent the displacement of his mortgage.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 64–74; Dec. Dig. § 57.*

For other definitions, see Words and Phrases, vol. 6, pp. 5134–5151; vol. 8, p. 7744.]

2. MORTGAGES (§ 151*)—PRIORITY OVER SUBSEQUENT MECHANIC'S LIEN CLAIMS—ESTOPPEL.

The fact that bonds were issued by a corporation for the purpose of raising funds to improve the mortgaged property does not create an equitable estoppel against the mortgagee and bondholders to prevent them

from claiming that their mortgage gives a prior lien as against mechanic's lien claims subsequently accruing.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 309–332; Dec. Dig. § 151;* Mechanics' Liens, Cent. Dig. §§ 358–370.]

3. MORTGAGES (§ 151*)—PRIORITY OF LIENS—MECHANICS' LIENS.

Whoever undertakes construction work upon property subject to a recorded mortgage must be assumed to have relied upon the personal responsibility of the other party to the contract and upon such liens as the statute grants in definite terms, and has no equity to displace the mortgage lien.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 309–332; Dec. Dig. § 151;* Mechanics' Liens, Cent. Dig. §§ 358–370.]

4. MORTGAGES (§ 151*)—PRIORITY OF LIENS—MECHANICS' LIENS.

Where a corporation had delivered its bonds, secured by a recorded mortgage, to a contractor for construction work, which in turn had made a valid contract for the sale of such bonds, prior to its entering into a contract with a subcontractor, the mortgage lien attached and was entitled to priority over any lien in favor of the subcontractor, although the bonds were not certified by the trustee until later.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 309–332; Dec. Dig. § 151;* Mechanics' Liens, Cent. Dig. §§ 358–370.]

5. MECHANICS' LIENS (§ 167*)—ACCRUAL OF RIGHT TO LIEN—SUBCONTRACTORS.

Under the Maine mechanic's lien statute (Rev. St. Me. c. 93, § 29), which gives a lien for labor or materials furnished "by virtue of a contract with or by consent of the owner," while the making of a principal contract for improvements by the owner may be taken as a consent to the making of subcontracts by the principal contractor, the right of a subcontractor to a lien cannot date from a time earlier than that on which he acted on such consent by entering into his subcontract.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 298; Dec. Dig. § 167.*]

Appeals from the Circuit Court of the United States for the District of Maine.

Suit in equity by the Central Trust Company of New York against the Bodwell Water Power Company and others. Appeals by the Allis-Chalmers Company and Clara E. Mullen and others, executors, mechanic's lien claimants, from a decree denying them priority. Affirmed.

Benjamin Thompson (Martin & Cook, on the brief), for appellant Allis-Chalmers Co.

Moorfield Storey and Robert G. Dodge (Joseph F. Gould, on the brief), for appellants Mullen and others.

Howard R. Ives and Arthur H. Van Brunt (Joline, Larkin & Rathbone and Libby, Robinson & Ives, on the brief), for appellee.

Before COLT, Circuit Judge, and ALDRICH and BROWN, District Judges.

BROWN, District Judge. The appellants allege error in a decree of the Circuit Court to the effect that a mortgage, dated July 1, 1905, given by the Bodwell Water Power Company to the Central Trust Company of New York to secure an issue of $1,000,000 of bonds, constitutes a first lien on the mortgaged property; and that liens for labor and materials claimed by the Allis-Chalmers Company, and by James B.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Mullen's executors, respectively, are subject to the superior lien of the mortgage.

[1] In order that a lien may attach for labor and materials under chapter 93, § 29, Revised Statutes of Maine, they must be furnished "by virtue of a contract with or by consent of the owner."

The appellants contend that a mortgagee not in possession is an "owner" within the meaning of the statute, and that consent may be inferred from knowledge that the work is being done, coupled with the failure to give a written notice that the owner will not be responsible therefor, as provided in section 30 of chapter 93.

Upon these propositions the Circuit Court found against the appellants, and this is assigned as error.

The Circuit Court was of the opinion that:

"A mortgagee out of possession is not in equity, and in the state of Maine, in law 'owner' of the property. The statute does not apply to him by its terms in using the word 'owner.' There is no just reason why it should be extended by construction to apply to him; and the Supreme Judicial Court of Maine has never held directly that it does apply to him. If he takes possession of the property, receives its income, and directs its management, then of course he becomes an 'owner' both in equity and at the common law of Maine. Until he does all that, he holds in fact only a lien, as he would in name under the laws of the state of New York and the laws of other states. For all practical purposes, he is no more than the holder of a lien."

See Atwood v. Paper and Pulp Co., 85 Me. 379, 27 Atl. 259.

The chief reliance of the appellants is Morse v. Dole, 73 Me. 351. A careful examination of this case shows that it does not decide, either directly or by implication, that a mortgagee is an "owner" under the statute. The expression quoted from the opinion—

"At least the knowledge of the mortgagee must in some way appear, before the written notice mentioned in R. S. c. 91, § 28 (amended 1876, c. 140), can be required from him in order to prevent a later claim from taking precedence of the mortgage"

—is by no means a clear reference to a mortgagee as an owner. On the contrary, the words "at least" indicate an intention to reserve the question of how much more than mere knowledge of a mortgagee must be shown.

In Morse v. Dole there was no evidence that the mortgagee had any knowledge of the rendering of services or delivery of materials. The court held that, without knowledge, consent could not be implied. This rendered unnecessary any consideration of the question now before us.

It is urged "the court clearly proceeds upon the assumption that a mortgagee might subject his interest to a mechanic's lien if he consents to the furnishing of the labor or materials." If there is such an assumption, it has not the force of a decision of the state court which this court should regard as establishing the law of Maine. It is an assumption for the purposes of a particular case only; it is not a decision of the court upon the point involved, and it is not even a safe indication that it was the view of the learned judge who wrote the opinion that the law of Maine was established as to this point.

Another expression is called to our attention:

"The lien can hold against such a mortgagee only in cases where he has become a party to the delivery of the materials, or to the work done, by consent tacitly or expressly given."

This is by no means definite. It may be that a mortgagee who has become a party to the contract between owner and mechanic or a guarantor thereof, or who has induced the mechanic or materialman to go on with the work, should be held to subject his own interest as mortgagee to a lien. This we are not called upon to decide. The expression last quoted is after all but dictum which indicates that under conditions indefinitely described as becoming "a party to the delivery of the materials, or to the work done," the statute might give a lien on the estate of a prior mortgagee out of possession.

We are of the opinion that the appellants have failed to establish the proposition that under Morse v. Dole, or any other decision of the Maine court, it has been settled as the law of Maine that a mortgagee out of possession is an "owner" within the meaning of the statute. The examination of the history of section 29, in connection with Morse v. Dole, 73 Me. 351, 353, tends rather to the contrary conclusion. This question, therefore, must be considered as an open question not concluded by the decisions of the Maine court, and not even discussed upon its merits in the Maine decisions. The brief of neither of the appellants suggests that their construction of the Maine statute is supported by other authority than the inconclusive Maine cases.

On the other hand, the brief for the Central Trust Company cites a number of cases to support its contention that, upon a proper construction of the words "consent of an owner," they are inapplicable to a mortgagee out of possession. Howard v. Robinson, 5 Cush. (Mass.) 119; Ettridge v. Bassett, 136 Mass. 314; Tompkins v. Horton, 25 N. J. Eq. 284; Cox v. Broderick, 4 E. D. Smith (N. Y.) 721; Phillips on Mechanics' Liens, §§ 67, 68; Otley v. Haviland, 36 Miss. 19; Reid v. Bank of Tennessee, 1 Sneed (Tenn.) 262; McDowell v. Rockwood, 182 Mass. 150, 65 N. E. 65; Lummus on Law of Liens, § 260.

Upon the brief of the Allis-Chalmers Company are cited the following Maine decisions touching the meaning of the expression "by virtue of a contract with or by consent of the owner": Norton v. Clark, 85 Me. 357, 27 Atl. 252; Shaw et al. v. Young, 87 Me. 271, 32 Atl. 897; Farnham v. Richardson, 91 Me. 559, 40 Atl. 553; Baker v. Waldron, 92 Me. 17, 42 Atl. 225, 69 Am. St. Rep. 483; York v. Mathis, 103 Me. 67, 68 Atl. 746. These decisions show that the words "by consent of the owner" have given rise to much doubt and to much difficulty in their application, but do not support the proposition that a mortgagee out of possession is an owner.

While the expression would doubtless cover implied or quasi contracts between mechanic and owner, yet from the opinion in York v. Mathis, 103 Me. 67, 76, 68 Atl. 746, quoting Huntley v. Holt, 58 Conn. 445, 20 Atl. 469, 9 L. R. A. 111, it would appear that "by consent of the owner" means something different from an agreement with the owner, not requiring such meeting of minds as would be essential to the making of a contract, but enough of a meeting of their minds to make it fairly apparent that they intended the same thing in the same sense.

It is said:

"That the conduct of the owner viewed in the light of all the circumstances, should justify an expectation of a lien."

In Shaw v. Young, 87 Me. 271, 32 Atl. 897, it is said:

"It seems to be assumed by the Legislature that the owner of real estate will be vigilant in caring for it either in person or by agents; that if he leaves it in possession of agents or tenants, making what repairs are necessary to be made from time to time, and makes no provision for them, but leaves them to be made by agents or tenants, and gives no notice of dissent, his consent may be inferred so far as the lien claimants are concerned."

This reason seems entirely lacking in the ordinary case of a mortgagee out of possession. The mere knowledge of a mortgagee that a mortgagor is improving the property, as he has a right to do, makes him in no sense a party to the delivery of the materials or the work done (Morse v. Dole), and there can be no just assumption that, like the ordinary owner, a mortgagee out of possession will be vigilant in caring for it, either in person or by agents. Shaw v. Young. See, also, Hanson v. News Pub. Co., 97 Me. 99, 53 Atl. 990.

The cases of Shaw v. Young, 87 Me. 271, 32 Atl. 897, and Hanson v. News Pub. Co., 97 Me. 99, 53 Atl. 990, are very suggestive as to the meaning which the court attached to the word "owner," as implying at least a relation of immediate control substantially different from the relation of a mortgagee, who is concerned only with the security of the money lent upon the faith of the mortgage, and of his interest. To place upon the ordinary mortgagee a duty to acquire knowledge of the dealings of the mortgagor with the property, or the duty of warning laborers and materialmen that the mortgagee insists upon his rights under his mortgage, would be an innovation of doubtful wisdom. The record of a mortgage is the most practical means of notice of the mortgagee's intent to insist upon his security. To charge him with consent because he fails to give personal notice in writing, in addition to the notice afforded by record of his mortgage, is to unsettle the rights of mortgagees.

While statutes giving liens to laborers and to those who furnish materials are to be liberally construed, yet, in the absence of a clear expression of the Legislature, the courts should not adopt by a construction of doubtful language a rule that would unsettle the rights of mortgagees or impair their security. We concur in the view of the learned Circuit Judge that there is no just reason why the statute should be extended by construction to a mortgagee out of possession. One who contracts with the owner of land to furnish labor and materials, or one who, with his consent, furnishes materials, is assumed to know, if a mortgage is recorded, that the consent of the mortgagor as owner can give a lien only to the extent of the mortgagor's interest. Morse v. Dole. He has no reasonable ground for an expectation or belief that a mortgagee who has advanced money upon the security of the land or on the improvements to be made thereon is willing to forego this security even if the money is advanced for the purpose of placing improvements upon the land.

Nor are the terms of the statute misleading. In ordinary usage the

term "owner" is never applied to an ordinary mortgagee out of possession, and would not be so understood.

These appellants had no contract with the owner, and were well advised by the statute that their right to a lien was dependent, not upon express contract, but upon consent, of the owner.

[2] Apparently the framers of the statute did not contemplate the impairment of the ordinary relation of mortgagor and mortgagee. The fact that the bonds were issued for the purpose of raising funds to improve the mortgaged property does not create an equitable estoppel against the mortgagee and bondholders to prevent them from claiming that their mortgage gives a prior lien. Dunham v. Railroad Co., 1 Wall. 254, 17 L. Ed. 584; Thompson v. Railroad Co., 132 U. S. 69, 10 Sup. Ct. 29, 33 L. Ed. 256; Porter v. Pittsburgh Co., 120 U. S. 649, 7 Sup. Ct. 1206, 30 L. Ed. 830; Toledo, etc., R. R. Co. v. Hamilton, 134 U. S. 296, 10 Sup. Ct. 546, 33 L. Ed. 905; Jones on Liens, § 1458.

[3] Whoever undertakes construction work upon property subject to a recorded mortgage must be assumed to have relied upon the personal responsibility of the other party to the contract and upon such liens as the statute grants in definite terms, and not upon the expectation of displacing the priority of mortgage liens. The argument that there is some sort of superior equity in claims for work and materials over liens for money previously advanced upon mortgage is without merit, and the chancellor cannot apply such a principle either to displace vested liens or to broaden a lien statute by a construction which disregards absolutely the rights in a mortgage security. Kneeland v. American Loan Co., 136 U. S. 89, 97 et seq., 10 Sup. Ct. 950, 34 L. Ed. 379.

[4] The next contention is that though the mortgage was recorded upon July 24, 1905, it was of no effect until the bonds were certified and issued, and that by reason of delay between the recording of the mortgage and the issue of bonds the Mullen lien attached prior to the lien of the mortgage. Before the record of the mortgage, however, the Bodwell Water Company and the Milford Construction Company had by contract of July 19th entered into a construction contract which provided inter alia for payment to the Milford Company of $700,000 of the mortgage bonds. On the same date, July 19th, the Milford Company accepted the offer of Farson, Leach & Co. to purchase the $700,000 of mortgage bonds at 90 per cent. and interest. On July 28th the Milford Company voted to forward to the complainant for certification $500,000 of these bonds at which time it had received from the Bodwell Company the entire mass of $700,000 of bonds.

In other words, the Bodwell Company, before any rights accrued to Mullen, had delivered $700,000 of bonds to the Milford Company in pursuance of the contract of July 19th.

The Mullen claimants attach great weight to the decision of the Circuit Court of Appeals for the Eighth Circuit in Reynolds v. Manhattan Trust Co., 83 Fed. 593, 27 C. C. A. 620, wherein it was held that a recorded railroad mortgage was not superior to mechanics' liens that

attached before any bonds were issued or any mortgage debt was created.

This case, however, does not afford us assistance in deciding whether, upon the facts above set forth, a mortgage debt was created to which the security of the mortgage attached at once. For the purposes of the present case, we need not consider the correctness of this decision, for it is limited to a state of facts where no bonds had been sold and no debt created, and does not discuss the question now before us. We are of the opinion that the record of the mortgage was notice to Mullen of all the substantial equities between the mortgagor and the construction company.

We agree with the learned Circuit Judge that, though lacking in formalities, the sale of the bonds was complete. As the Bodwell Company had parted with all interest in the entire issue of bonds, the trustee held the mortgage title, not as agent of the Bodwell Company, which by the sale had lost all right of revocation which would destroy the subject-matter of the contract, but as trustee for the security of the bonds.

We find no error in the decision of the Circuit Court that the mortgage lien attached prior to the earliest date at which it is claimed the Mullen lien took effect.

The deed of trust securing the payment of the bonds was an incident, and accessory to them. The transfer of the bonds carried with it to the transferees the benefit of the security. New Orleans Canal & Banking Co. v. Montgomery, 95 U. S. 16, 18, 24 L. Ed. 346.

It is contended that Farson, Leach & Co. are not bona fide purchasers because they did not make payment before the Mullen contract was made. It is urged that the fact that they had agreed to purchase is immaterial and does not give priority. Dresser v. Missouri & Iowa Ry. Construction Co., 93 U. S. 92, 23 L. Ed. 815; Lytle v. Lansing, 147 U. S. 59, 13 Sup. Ct. 254, 37 L. Ed. 78, are cited. In the first of these cases there was notice of fraud, which made it the duty of the purchaser to withhold further payment. In the second case the bonds were void, and notice given the purchaser before payment and while he might have repudiated the purchase.

But these cases are not in point. There was no invalidity in the subject-matter of the contract and no fraud. Neither was there any right in the Milford Construction Company or in Farson, Leach & Co. to repudiate their contracts.

At the time of the purchase of the bonds there was, of course, knowledge that construction work would be performed; but this affords no reason why a contract for a first lien on all the mortgage property should not be upheld. Here is no element of fraud, nor is there any element of inequity in the fact that the bondholders sought a lien that should precede all possible future liens. A valid obligation arose to pay for the bonds, and the subsequent fact that Mullen entered into a subcontract and began work afforded no ground for repudiating this obligation.

[5] The claim of the Allis-Chalmers Company to priority rests upon its attempt to date its lien, not from the time it entered into its first

contract with the Milford Construction Company, August 16, 1905, but from the date of the main contract between the Bodwell Water Power Company and the Milford Construction Company. It is urged that a lien claim relates back to the day when each contract for labor and materials was made, even though delivery of materials or performance of work is later. See Morse v. Dole, 73 Me. 351; Farnham v. Richardson, 91 Me. 559, 40 Atl. 553.

Whether the doctrine of these cases is here applicable is very doubtful. The Allis-Chalmers Company and Mullen had no contract with the owner, but subcontracts with the construction company. They must stand upon the provision which gives a lien for labor or materials furnished by consent of the owner. As pointed out in Norton v. Clark, 85 Me. 357, 27 Atl. 252, this is "alternative" to a contract with the owner.

If, as is urged, consent is to be inferred from knowledge that the work is being done, coupled with a failure to give the notice provided for in section 30, there is difficulty in carrying the date of the lien back to an earlier time than the beginning of work under the subcontract, unless, perhaps, it can be proved that express consent of the owner preceded and induced the making of a subcontract, a point which we need not decide, for we may assume, for the purposes of this case only, that the right to a lien arose contemporaneously with the incurring of an obligation to furnish labor or materials.

The Allis-Chalmers Company incurred no such obligation until after the mortgage had completely attached, and all questions as to the formalities of the bond issue had disappeared.

That the original construction contract may be regarded as evidence of the consent of the Bodwell Water Power Company is established by Norton v. Clark, 85 Me. 357, 27 Atl. 252. But this decision is to the effect that the subcontractor is not entitled to his lien merely by substitution to the rights of the principal contractor, but that it arises from the performance of the work as a direct right under the statute, a right which overrides a provision in the main contract that no lien should exist.

This seems inconsistent with the reasoning of the court in Glass v. Freeburg, 50 Minn. 386, 52 N. W. 900, 16 L. R. A. 335, relied upon by the Allis-Chalmers Company. In Massachusetts the words of a statute, "the contract under which the lien is claimed," were held to mean the contract of the party claiming the lien, and not the contract of a prior contractor for whom the claimant is working. Savoy v. Dudley, 168 Mass. 538, 47 N. E. 424; Batchelder v. Hutchinson, 161 Mass. 462, 37 N. E. 452; Bowen v. Phinney, 162 Mass. 593, 39 N. E. 283, 44 Am. St. Rep. 391; Friedman v. Hampden, 204 Mass. 494, 504, 90 N. E. 851. Neither can the words of the statute, "by virtue of a contract with the owner," be so liberally interpreted as to cover everything done by virtue of subcontracts made with the builder or materialman who has the main contract with the owner. Were the reasoning of Glass v. Freeburg applied to this case, there would be a complete defense in the fact that the Milford Company had been paid in full. The doctrine of subrogation to the rights of an original contractor would not avail

the claimant. Norton v. Clark goes only so far as to hold that the original contract may be evidence of consent.

If we apply the analogy of implied contracts or agreements, as was suggested in York et al. v. Mathis et al., 103 Me. 67, 68, 68 Atl. 746, the earliest date for a lien is the date of action upon the owner's consent. We are of the opinion that both of these appellants entered into their subcontracts with notice of a recorded mortgage, which was a valid security for a debt existing before the date of the earliest subcontract. In point of time, the mortgage has priority over the liens claimed by these appellants. We are further of the opinion that, according to the natural and just interpretation of the Maine lien statute, it does not cut under the rights of a mortgagee out of possession, and that the construction of the statute for which the appellants contend is strained and unnatural.

The adoption of a construction, which makes a mortgagee out of possession an "owner" and also subjects him to indefinite rules as to "consent of the owner," would ignore the substantial difference in the relation to the property of mortgagor in possession and mortgagee out of possession, and tend to unsettle the law as to the rights of mortgagees. We find nothing in the Maine decisions which supports the contention that such a result would be equitable. We agree with the conclusion of the Circuit Court.

The decree of the Circuit Court is affirmed, and the appellee recovers its costs of appeal.