CHARLES A. HANSON

*vs.*

NEWS PUBLISHING COMPANY, and another.

Cumberland.    Opinion December 10, 1902.

*Lien.   Landlord.   Lessee.   Temporary Alterations.   R. S., c. 91.*

| 97 | 99 |
| 97 | 354 |
| 97 | 355 |

| 97 | 99 |
| 103 | 76 |

| 97 | 99 |
| 106 | 239 |

The statute giving a lien for labor and materials in erecting, altering, moving or repairing a house, building or appurtenances was evidently intended to apply to repairs or alterations which become fixtures, not removable by the tenant. To create a lien, the materials must be used for erecting, altering or repairing the building; must be so applied as to constitute a part of the building. It will not be sufficient that they are placed in it for its more convenient use.

Temporary alterations made by the lessee for his own convenience, not affixed to the building in a manner to become a part of the realty, subject to removal by the tenant, and not essential to the use and purpose for which the building was designed by its owner, and which were in fact removed by the lessee, leaving no trace of them in existence, except a few nail holes in the floor and screw holes in the wall, create no lien upon the building.

The plaintiff claimed a lien upon the Falmouth Hotel building, owned by the P. H. & J. M. Brown Company, for alterations and additions to a store in that building leased to the News Publishing Co. The principal charges were for partitions put in by the lessee for its own convenience, and not permanently attached to the building. They were removable by the ten-

ant, and were in fact removed by it. The landlord had no control over them, nor could he object to the work thus done by the tenant. *Held;* that no lien attached therefor to the building.

Some small repairs were made which were permanent in character, but of these the Brown Company had no knowledge, and in no sense consented thereto. Besides, they were so inextricably mixed with the other charges, that it is impossible to separate them.

*Held;* that no lien exists therefor.

On report. Judgment for owners of building on which plaintiff claimed a lien for alterations and additions.

Case reported from the Superior Court for Cumberland County.

From the reported evidence it appeared that the plaintiff, a carpenter and builder, claimed a lien upon the Falmouth Hotel building and lot of land on which it stands in Portland, owned by the defendant, P. H. & J. M. Brown Company, to satisfy his demand against the defendant News Publishing Company, a corporation in said Portland, for labor by him performed and materials by him furnished for altering and repairing the store number 208 Middle Street, a part of the Falmouth Hotel building, by virtue of a contract made by said plaintiff with said News Publishing Company, the latter a tenant in possession of said store.

The News Publishing Company was lessee of the store under the Falmouth Hotel, under a written lease from P. H. & J. M. Brown Company, the owners thereof, for a period of three years from the first day of July, 1901.

The lease was in the common form, with the usual covenants as to use and occupation, payment of rent as stipulated therein, and agreement to surrender the premises at the end of the term in good order, with a provision exonerating the lessor from any damage caused by overflow of water pipes, etc.

The lease contained no agreement as to repairs or alterations.

The premises included in the lease were an empty store comprising the ground floor and basement of a portion of the Falmouth Hotel building, which had been used for store purposes for years, by various tenants; and at the time possession was taken by News Publishing Company, contained no partitions, furniture or fixtures, except some shelving.

When leased to News Publishing Company, the store was in good repair, with a steel ceiling, and a comparatively new hard wood floor.

Having obtained possession of the premises, the defendant News Publishing Company made a verbal contract with plaintiff to divide up the store into offices by partitions made of wood and glass, with doors, and a cashier's office with a glass front and paneled work; and in addition thereto, the plaintiff made some other alterations and minor repairs all under the direction of News Publishing Company.

Other facts appear in the opinion.

The claim for the lien was recorded Sept. 10, 1901.

*Wilford G. Chapman,* for plaintiff.

*Harry R. Virgin and Franklin C. Payson,* for owners of building.

SITTING:   WISWELL, C. J., STROUT, SAVAGE, POWERS, SPEAR, JJ.

STROUT, J.   Plaintiff claims a lien upon the Falmouth Hotel building, for labor and materials used in a store in that building, leased to the Publishing Company, under an employment by that company, upon the ground that the owners of the building consented thereto.   The lease was in the usual form, and contained no provision in regard to alterations or repairs.

The P. H. & J. M. Brown Company leased to the News Publishing Company for three years "the store numbered two hundred and eight" under the Falmouth Hotel.   The News Publishing Company, as such lessee, for its own convenience, put certain partitions into the store, nailed to the floor and screwed to the walls, but not nailed or otherwise fastened to the ceiling overhead.   A runner was put down and lightly nailed to the floor, and the partitions studded from that.   When leased, the store was "one large open room" with shelving.   The News Publishing Company took out this shelving. The partitions were so put up that they could be removed without injury to the building, and were in fact removed by the lessees. They were not necessary or useful to the store, as a store, for which it was constructed and was intended to be and theretofore had been used by the owners.   Mr. Brown, the treasurer and general manager of the Brown Company, was about the premises and saw these parti-

tions being put in, but gave no express consent, nor made any objection, except that they should not be nailed to the steel ceiling overhead.

The statute giving a lien for labor and materials "in erecting, altering, moving or repairing a house, building or appurtenances," was evidently intended to apply to repairs or alterations which became fixtures, not removable by the tenant. "To create a lien, the materials must be used for erecting, altering, or repairing the building; must be so applied as to constitute a part of the building. It will not be sufficient that they be placed in it for its more convenient use." *Lambard* v. *Pike*, 33 Maine, 144. As said by this court in *Baker* v. *Fessenden*, 71 Maine, 293,—"it must affirmatively appear that this machinery for which the labor was furnished, was so connected with and attached to the building, so adapted to and necessary for the use for which it was erected, as to lead to the conclusion that it was intended to be permanently a part of it, and in this action a part of the realty." A lien is given upon the ground that the work has been a benefit to the realty, and has enhanced its value.

These partitions were evidently temporary in their character and so designed by the tenant. He had a right to put them in for his convenience, and the lessor could not prevent. During the tenancy the tenant had the right to remove them, which right he exercised. They were of no service to the store, for which the tenement was designed and fitted by the owners. They were not of the character to impose a lien upon the building.

While the lien statute is to be construed somewhat liberally to accomplish its beneficent purpose, the rights of the owner should be fairly protected.

For such temporary alterations made by the lessee for his own convenience, not affixed to the building in a manner to become a part of the realty, subject to removal by the tenant, and not essential to the use and purpose for which the building was designed by its owner, and which were in fact removed by the lessee, leaving no trace of them in existence, except a few nail holes in the floor and screw holes in the wall, no lien upon the building can be founded.

Nor does the case show such consent by the owner as is required

to afford foundation for a lien. "Consent, within the meaning of the statute, is held to mean something more than acquiescence. It implies an agreement to that which could not exist without such consent." Jones on Liens, § 1253.

In *Shaw* v. *Young*, 87 Maine, 271, the building was a hotel in need of repairs inside and out, which were necessary for the preservation of the building, and to keep up its earning powers as a hotel. The owners saw and knew the repairs were being made, and themselves advised more or less with the workmen about the work, and made no objection. Under such circumstances, consent might well be implied.

In the present case, no such necessity existed. The fact that Mr. Brown knew the lessees were putting in the partitions, which were of no service to him or to the store, and to which he had no right to object consistently with the rights of the lessee, does not authorize the inference that he consented, in the sense of the statute. *Huntley* v. *Holt*, 58 Conn. 449, 9 L. R. A. 111; *Francis* v. *Sayles*, 101 Mass. 438.

The evidence shows some other small repairs, which might be regarded as fixtures. Mr. Brown says he had no knowledge of these, and there is no evidence that he had, nor that in any way he consented to them. Whatever small amount of labor and materials entered into these is so inextricably intermingled with the larger and more important work, that neither the items nor their amounts can be separated and ascertained. No lien can therefore attach for them.

*Judgment for the P. H. & J. M. Brown Company.*