**FISCHBACH & MOORE, INCORPORATED**

v.

**PRESTEEL CORPORATION, J. B. Brown & Sons and United Mortgage Company.**

Supreme Judicial Court of Maine.

March 1, 1979.

Jensen, Baird, Gardner, Donovan & Henry by George F. Burns (orally), W. John Amerling, Jr., Portland, for plaintiff.

Bernstein, Shur, Sawyer & Nelson by William W. Willard (orally), Portland, Verrill & Dana, Christopher J. W. Coggeshall, Robert B. Patterson, Jr., Portland, for defendants.

Before McKUSICK, C. J., and WERNICK, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

This is an appeal by defendant J. B. Brown & Sons (Brown) from a May 3, 1978 judgment of the Superior Court (Cumberland County) adjudicating that plaintiff Fischbach & Moore, Inc. had perfected a valid and enforceable lien against Brown's interest in certain real property upon which the contractor had made installations with Brown's consent. Brown contends on appeal that the Superior Court Justice committed error in finding (1) that the labor and materials were "lienable" under 10 M.R.S.A. § 3251 (Supp.1978), which grants a lien on a structure to one who supplies labor and materials for "erecting, altering, moving or repairing" it, and (2) that Brown had "consented" to the work, within the meaning of the same statutory provision.

While we deny the appeal, for reasons subsequently discussed we modify the judgment to reflect that 20% of the work performed was non-lienable.

In consequence of a concerted effort by Portland's commercial community, Presteel Corporation determined to relocate in Portland and there engage in the manufacture of pressed steel products. Although Presteel wished to purchase a building suitable for its operations, its financial condition

compelled it to lease. To facilitate Presteel's move, Brown agreed to make the necessary purchase of a building and to lease it to Presteel.

Paragraph 29 of the lease executed by Brown and Presteel "authorize[d] [t]enant to install, if [t]enant so elects, . . . all electric, gas and air piping, and all footings and pits for machinery as are necessary for [t]enant's operations." The landlord Brown was obligated to execute "instruments embodying the approval of [l]andlord" so that Presteel could obtain "any license or permit for the making of such . . . installations in, to or upon . . . [the] [l]eased [p]remises . . . ." In addition, the lease indicated that the parties recognized that the installation work tenant was authorized to have done might be "lienable", by the provision:

"Tenant agrees to pay promptly when due all charges for labor and materials in connection with any work done by Tenant or anyone claiming under Tenant to or upon the Leased Premises so that the Leased Premises shall at all times be free of liens. . . . If the improvements by Tenant exceed $10,000, then Tenant shall provide appropriate security protecting Landlord against such liens."

Pursuant to the authorization to install "all electric, gas and air piping . . . necessary for [t]enant's operations", the tenant Presteel contracted with plaintiff for the performance of work that ended up as more than $55,000.00 worth of wiring and installation of equipment. Plaintiff was able to achieve payment of only $1,000.00 of this obligation from Presteel.

Brown has stipulated that plaintiff contractor met the statutory requirements for asserting and perfecting a *claim* of lien against its building, but Brown challenges the *validity* of the claim on the grounds that (1) the work done was not "lienable" in nature, and (2) even if it was, Brown as the "owner" of the building had not in fact given consent for the performance of the work.

**1.**

Except to the extent defined in part 3 of this opinion, we sustain the decision of the presiding Justice that plaintiff contractor's work was "lienable" within the contemplation of Section 3251 and the cases construing it. The evidence sufficiently shows that the items supplied and installed were

"so connected with and attached to the building, so adapted to and necessary for the use for which it was . . . [designed], as to lead to the conclusion that it was intended to be permanently a part of it, and . . . a part of the realty." *Baker v. Fessenden*, 71 Me. 292, 293 (1880).

The work done was equivalent to the plainly "lienable" work of rewiring a home to accommodate such modern conveniences as air conditioning, an electric range or clothes dryer. While the tenant supplied many of the terminals, junction boxes, switches and panels that made up the system linking its machines to a 550–watt transformer, plaintiff contractor supplied all of the remaining interstitial necessities comprising a complete electrical distribution system. The work included imbedding steel grid structures in a concrete pad, as well as drilling holes in concrete and brick walls, ceilings, and floors to receive expandable lead anchors for bolting into place the boxes, conduit, busduct, panels and switches the contractor was furnishing.

Brown would characterize these alterations as within the rule that a lien cannot arise against a building where the putative lienor's improvements were "not intended 'to constitute a part of the building', but were designed 'for its more convenient use' ", *Marshall v. Mathieu*, 143 Me. 167, 171, 57 A.2d 400, 402 (1948), quoting *Lambard v. Pike*, 33 Me. 141, 144 (1851), and were "not essential to the use and purpose for which the building was designed by its owner . . . ." *Hanson v. News Publishing Co.*, 97 Me. 99, 102, 53 A. 990, 991 (1902). However, unlike the temporary partitions of *Hanson, supra,* or the portable restaurant tables of *Marshall, supra,* plaintiff contractor's work here, as de-

scribed above, constituted the installation of fixtures and was thus lienable. *Hanson, supra,* at 102, 53 A. 990. An installation may facilitate the tenant's "more convenient use" of the premises and still provide the basis for a lien enforceable against the landlord's interest in the building. See, e. g., *York v. Mathis,* 103 Me. 67, 80, 68 A. 746 (1907). Even if these improvements may have been necessitated by the peculiar requirements of the tenant's machinery, it is clear as well that they satisfy the traditional test for a fixture: annexation to the realty of an item adapted for use with that realty, with the intention that the item annexed shall become a permanent accession to the realty. *Bangor Hydro-Electric Co. v. Johnson,* Me., 226 A.2d 371, 378 (1967). As indicia of the intention that the annexation be permanent we note (1) the uncontroverted testimony to the effect that the wiring system installed was adaptable to a variety of manufacturing uses; (2) the provision of the lease by which the tenant was granted an option to purchase at a figure $400,000 higher than the price just paid by the landlord; (3) the provisions of Par. 29 of the lease giving the tenant authorization to go forward with "toilet facilities and related plumbing, all electric, gas and air piping", subject to the condition that if the cost exceeded $10,000, "[t]enant shall provide appropriate security protecting Landlord against . . . liens"; (4) the nature of the work and the manner in which it was performed, as described above; and (5) "the relation of the parties", see *Bangor Hydro-Electric, supra,* which here amounted to the joint involvement of a real estate and a manufacturing concern in the speculative venture of settling the manufacturer into new quarters that were formerly no more than an open warehouse.[1]

■ In these circumstances the presiding Justice correctly determined that this work was lienable. It was "essential to the use and purpose for which the building was . . . [acquired] by its owner . . ." *Hanson, supra,* 97 Me. at 102, 53 A. at 991. It was "so applied as to constitute a part of the building." *Lambard, supra,* at 144. A lien being "given upon the ground that the work has been a benefit to the realty, and has enhanced its value . . ." *Hanson, supra,* 97 Me. at 102, 53 A. at 991, the presiding Justice properly found lienable the affixation to a building, designed to house manufacturing operations, of the elements of a power distribution system adaptable to the needs of many manufacturing processes.

**2.**

The issue of whether Brown, as the owner, gave consent to the work presents no difficulty.

■ In the situation where, as here, the owner of the building is a landlord who has made a lease with the tenant, and it is the tenant who has arranged for the performance of the work, the guide for analysis is concisely stated in *Maxim v. Thibault,* 124 Me. 201, 203, 126 A. 869, 871 (1924) as follows:

"The consent of the owners [landlord] must be inferred from the language of the lease, . . . [the landlord's] knowledge of what was contemplated and was actually being done, and . . . [the landlord's] conduct."

■ In the case at bar Par. 29 of the lease in express terms authorized the tenant to do, or have done, the work in question. Moreover, Brown's president acknowledged at trial that under Par. 29 of the lease, the tenant could go forward with the performance of electrical installation work without need for any additional special, or particular, consent by Brown. In addition, agents of Brown had actively sought the zoning variance necessary to enable the tenant to go forward with the work. Lastly, Brown knew that the work was actually being

---

1. We note as well that in Par. 19 of the lease the parties evidenced their understanding that the improvements and alterations undertaken by Presteel would enure to Brown's benefit. In Par. 19 the tenant covenanted to surrender "all alterations, additions and improvements which may have been made upon the premises, except equipment, personal property, movable furniture or *movable trade fixtures* put in at the expense of the Tenant." (emphasis added)

done, the vice-president of the corporation having observed the work in progress on frequent trips that he made to the premises, and Brown never objected in any respect to the continuance of the work.

In light of all these circumstances the finding of the presiding Justice that Brown had in fact consented to the work at issue, far from being clearly erroneous, was plainly correct.

As an alternative position, Brown argues that even if it consented to some of the work done by tenant, it did not consent to that part of it beyond $10,000.00. Brown asserts that it did not know that tenant was exceeding the $10,000.00 amount which under Par. 29 of the lease (see p. 399, ante) triggered an obligation of tenant Presteel to provide "appropriate security protecting [l]andlord against . . . liens." Brown's claim appears to be that without such knowledge, it cannot be held to have consented to such portion of the work as was in excess of $10,000.00. The contention requires that we interpret the lease provision regarding Brown's right to have appropriate security against liens for "improvements by [t]enant [which] exceed $10,000 . . . ."

■ We read the lease provision for such right in the landlord Brown as in no respect a condition precedent to the existence of Brown's consent for work in excess of $10,000.00. Rather, Par. 29 reveals Brown's plenary authorization for the tenant to undertake the work therein described, regardless of whether it would cost less or more than $10,000.00. In light of such full authorization, Brown provided itself with a distinctly separate and independent protection as to such of the authorized work as might exceed $10,000.00, by imposing on the tenant an obligation to provide security. This special protection was as independent of the scope and extent of the work authorization given by Brown as were the provisions in the same paragraph that obligated the tenant

"to pay promptly when due all charges for labor and materials in connection with any work done by [t]enant or any-

one claiming under [t]enant to or upon the Leased Premises so that the Leased Premises shall at all times be free of liens",

and

"to save [l]andlord harmless from and indemnify [l]andlord against, any and all claims for injury, loss or damage to persons or property caused by or resulting from the doing of any such work."

That Brown may not have been vigilant in policing its tenant's compliance with its independent obligations to protect Brown against the existence of liens, or against Brown's suffering the ultimate burden of liens that might come into existence, cannot, through the endeavors of hindsight, be permitted to alter, or diminish, the plenary authorization conferred by Par. 29 of the lease for the work here in question.

3.

■ One additional point remains, the landlord's contention that the lienor's claim is fatally defective for having commingled lienable and non-lienable work. Plainly, some of the work was non-lienable: that involved in the repair and installation of equipment and machinery owned by the tenant. Brown argues that under the rule of *Baker v. Fessenden*, 71 Me. 292, 293 (1880) and *Mitchell v. Page*, 107 Me. 388, 392, 78 A. 570 (1910), the lien must fail by virtue of the intermixture. However, these cases make plain that such a harsh result will follow only when it is

"utterly impossible for the court and probably for the parties to make any such distinction between the two kinds as to authorize a lien judgment for any definite amount." *Baker, supra*, at 293.

We find no such impossibility here. Moreover, defendant Brown has represented during the appeal that it will accept and abide by the contractor's estimate as to how much of the work involved the repair and installation of the tenant's equipment and machinery. The uncontroverted testimony of plaintiff contractor's foreman, Joseph Greene, was that such work constituted 20%

of the total. We conclude therefore that it is definitively established that 20% of the work at issue was non-lienable. The judgment will be modified accordingly.

The entry is:

Appeal denied; judgment modified to fix the amount of the valid and enforceable lien of plaintiff as $44,353.90; as thus modified, judgment affirmed; case remanded to the Superior Court for entry of the modified judgment herein affirmed; no costs on appeal.

POMEROY, J., did not sit.