STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO: RE-10-565


THAYER CORPORATION,

                    Plaintiff,

                                                  **ORDER ON PLAINTIFF THAYER**
        v.                                        **CORPORATION'S MOTION FOR**
                                                  **SUMMARY JUDGMENT AND**
INTERNATIONAL WOODFUELS,                          **DEFENDANT M.S.A.D. #61'S**
                                                  **CROSS-MOTION FOR**
and                                               **SUMMARY JUDGMENT**

M.S.A.D. #61

                    Defendants.


Before the court is Plaintiff Thayer Corporation's motion for summary judgment

filed pursuant to M.R. Civ. P. 56 on all counts of its complaint and Defendant M.S.A.D.

#61's cross motion for summary judgment on counts I and IV of the complaint.

## BACKGROUND

Thayer is a Maine business corporation with a place of business in Auburn,

Maine. IWF is a Delaware limited liability company with a place of business in

Portland, Maine. M.S.A.D. #61's is a Maine School Administrative District with a

principal place of business in Bridgton, Maine. M.S.A.D. #61 contracted with IWF for

the installation of a heating system at the building known as Lake Region High School.[1]

On or about January 7, 2010, IWF contracted with Thayer to provide assembly

and installation of a Swebo biomass boiler on real estate owned by M.S.A.D. #61 located

---

[1] In support of this statement, Thayer cites to M.S.A.D. #61's answer to Thayer's complaint at
paragraphs 1 and 3. (Pl.'s S.M.F. ¶ 4.) The citation does not support the statement. However,
both M.S.A.D. #61 and IWF admit this statement of material fact.

1

at 1877 Roosevelt Trail, Naples, Maine and directly connected to the buildings thereon.[2] Thayer provided all materials and services required under the contract. The full and fair value of the services Thayer provided to IWF is $133,176.25. IWF contracted for and agreed to pay Thayer this amount, but has failed to make any payments. The contract between IWF and Thayer also provides that IWF will pay all of Thayer's court costs and attorney's fees.[3] (Pl.'s S.M.F. ¶ 10, *as qualified by* IWF Opp. S.M.F. ¶ 10.)

On or about July 28, 2009, M.S.A.D. #61 and IWF entered into a Renewable Space Heating Energy Services Agreement (the "Agreement"). Under the Agreement, IWF provided metered heat energy for heat and hot water to M.S.A.D. #61's Lake Region High School through on-site energy production facilities owned and operated by IWF. As part of the Agreement, IWF assembled and installed biomass heating equipment at the high school (the "System"). The System included a wood pellet boiler, storage silo, equipment to feed the wood pellet fuel from the silo to the boiler, and piping to interconnect the System to the high school's heating system. The wood pellet boiler and piping to interconnect the System to the high school's heating system are located inside the high school building. The silo is located outside the high school building.

There is no dispute that under the terms of the Agreement, IWF retained full ownership of all such equipment, including its maintenance and operation, IWF is required to remove its equipment at the end of the Agreement, and that M.S.A.D. #61 does not own the equipment.[4] Thayer's work and services, which are the subject of its

---

[2] The real estate located at 1877 Roosevelt Trial in Naples, Maine, also known as Lake Region High School, is described in deeds recorded in the Cumberland County Registry of Deeds in Book 3012, Page 15 and Book 3012, Page 19.

[3] IWF states that the contract language should be construed to allow only "reasonable" attorney's fees. (IWF Opp. S.M.F. ¶ 10.)

[4] Section 3 of the Agreement, as amended, states:

3.      **Installation, Ownership and Removal of System**

2

claims, are related to the assembly of the biomass heating equipment owned by IWF, and the connection of the equipment to the existing school piping. (IWF Opp. S.M.F. ¶ 14; MSAD S. Add'l M.F. ¶¶ 5-6.)

The last day of services provided by Thayer was March 24, 2010.[5] Thayer recorded a lien for the materials and services provided to IWF on May 26, 2010 in the Cumberland County Registry of Deeds in Book 27796, Page 105. Thayer subsequently filed an action to enforce its lien in the Bridgton District Court on or about July 16, 2010, less than 120 days after the last day of services and / or material provided by Thayer. The case was transferred to this court on November 24, 2010.

In its four-count complaint, Thayer brings causes of action for: count I against IWF and M.S.A.D. #61 – lien action, count II against IWF – account annexed, count III against IWF – breach of contract, and count IV against IWF and M.S.A.D. £61 – unjust enrichment. Thayer filed a motion for summary judgment on all counts of its complaint. In response, M.S.A.D. #61 filed a cross-motion for summary judgment.

---

(a)    Installation. [IWF] shall install each System described in exhibit A. Installation, including the interconnection to [M.S.A.D. #61's] hot water distribution system, shall be coordinated with [M.S.A.D. #61] to minimize disruption to normal business operations. All such installation activity shall be subject to [M.S.A.D. #61's] prior written approval, shall be done during normal business hours, and shall be in accordance with all applicable codes, ordinances, and laws. [M.S.A.D. #61's] approval shall be given by [M.S.A.D. #61's] Representative as designated in Section 16 and shall not be unreasonably withheld or unduly delayed. Installation shall be completed within _____ days after Effective Date of the Agreement.
(b)    Ownership. Each System, including all related equipment, fuel (wood pellets), and storage facilities shall at all items remain the property of [IWF].
(c)    Operation and Maintenance. [IWF] shall operate and maintain each System.
(d)    Removal. Within 90 days after termination of this Agreement, [IWF] shall, at its expense, remove each System from each Facility and restore such Facility's site to its former condition.

(MSAD S. Add'l M.F. ¶ 9; Phillips Aff. ¶ 10.)

[5] In its original complaint, Thayer stated that the last day its services were provided was March 14, 2010. (Compl. ¶ 5.) Thayer subsequently amended its complaint without objection, changing the last date of services to March 24, 2010. (See Am. Compl. ¶ 5.)

3

Thayer contends that M.S.A.D. #61 consented to and accepted the benefits of the materials and services provided by Thayer. (Pl.'s S.M.F. ¶ 14.) M.S.A.D. #61 objects, claiming that the heating system provided by Thayer is not a "house, building or appurtenance," and therefore Thayer's work is not lienable. (MSAD Opp. S.M.F. ¶ 14.) Alternatively, M.S.A.D. #61 claims that Thayer conveyed to it no benefit and that any benefit that M.S.A.D. #61 obtained was a direct result of its contract with IWF. (MSAD Opp. S.M.F. ¶ 14.) A hearing was held on May 5, 2011.

## DISCUSSION

### 1. Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. An issue of "fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Inkell v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747 (quoting *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179).

### 2. Mechanic's Lien

Thayer seeks to enforce a mechanic's lien filed on May 26, 2010 and to compel the sale of real estate and buildings located at 1877 Roosevelt Trial in Windham, Maine. Title 14, section 3251 of the Maine Revised Statutes states:

> *Whoever performs labor or furnishes labor or materials,* including repair parts of machines used, or performs services as a surveyor, an architect or an engineer, or as a real estate licensee, or as an owner-renter, owner-lessor, or owner-supplier of equipment *used in erecting, altering, moving or repairing a house, building or appurtenances, including any public building erected or owned by any city, town, county, school district or other municipal corporation,* or in constructing, altering or repairing a wharf or pier, or any building thereon, including the surveying, clearing, grading, draining, excavating or landscaping of the ground adjacent to and upon which any such objects are constructed, or in selling any interest in land, improvements or structures, by virtue of a contract with or by consent of

4

the owner, *has a lien thereon and on the land on which it stands and on any interest such owner has in the same, to secure payment thereof, with costs . . . .*

10 M.R.S. § 3251 (emphasis added). IWF and M.S.A.D. #61 claim that the mechanic's lien statute does not apply against them in this case.[6]

Whether the equipment provided by Thayer is "lienable" turns on whether was it was "intended to be permanently a part of [the building], and . . . a part of the realty." *Baker v. Fessenden*, 71 Me. 292, 293 (1880); 10 M.R.S.A. § 3251. The Agreement obligates IWF to "remove each System from each Facility and restore such Facility's site to its former condition." Accordingly, the court concludes that Thayer's claim must fail because the equipment provided by Thayer is not "lienable." There is no evidence that the equipment provided was "intended to be permanently a part of [the building], and . . . a part of the realty." *Baker*, 71 Me. at 293 (1880); *Fischbach & Moore, Inc. v. Presteel Corp.*, 398 A.2d 397, 399-400 (Me. 1979) (noting that there must be indicia of intention that annexation be permanent); 10 M.R.S. § 3251.[7]

Nor does the System satisfy the traditional test for a fixture. Work is lienable if it is intended to be a fixture. *Fischbach & Moore, Inc.*, 398 A.2d at 399-400 (noting that there must be indicia of intention that annexation be permanent). In this case, the court cannot say that the System is so "closely connected to land that [it is] regarded as an irremovable part of the real property with which [it is] associated." *Searle*, 2010 ME 89, ¶ 16, 3 A.3d at 396 (quotations omitted). The Agreement obligates IWF to "remove each System from each Facility and restore such Facility's site to its former condition." The

---

[6] At the hearing, Thayer argued that any improvement to real estate that adds value to the property is "lienable." Simply because an improvement adds value does not make it lienable. The statute makes no mention of an increase in the property's value. *See* 10 M.R.S. § 3251.

[7] As further evidence that the System was not intended to be permanent, there is no sale-leaseback provision or option to purchase in the contract. *Compare Fischbach & Moore, Inc.*, 398 A.2d at 400 (lease granted tenant an option to purchase). Additionally, M.S.A.D. #61 did not have the opportunity to execute a lien waiver to protect its property interest. *Compare id.* The parties intended that IWF be the owner of the System.

plain language of the Agreement, and the undisputed facts on the record demonstrate that the parties did not intend the heating system to be a fixture. Therefore, it is not "lienable" under section 3251.

3.    Account Annexed

Title 16, section 355 of the Maine Revised Statutes states:

> In all actions brought on an itemized account annexed to the complaint, the affidavit of the plaintiff, made before a notary public using a seal, that the account on which the action is brought is a true statement of the indebtedness existing between the parties to the action with all proper credits given and that the prices or items charged therein are just and reasonable shall be prima facie evidence of the truth of the statement made in such affidavit and shall entitle the plaintiff to the judgment unless rebutted by competent and sufficient evidence. When the plaintiff is a corporation, the affidavit may be made by its president, vice-president, secretary, treasurer or other person authorized by the corporation.

16 M.R.S. § 355; *see also Cianchette v. Hanson*, 152 Me. 84, 123 A.2d 772 (Me. 1956). The affidavit of Daniel Thayer meets this standard and, therefore, is prima facie evidence of the truth of the statements contained therein. *See Brunswick Artesian Well Co. v. Hutchinson*, 420 A.2d 1227, 1229 (Me. 1980). The attached Exhibit 6 is detailed and specific, and indicates that IWF is responsible to Thayer for all of the specified amounts. Accordingly, Thayer has presented evidence sufficient to entitle it to summary judgment on Count II. However, Thayer's award is limited to the amount established in the affidavit. (Thayer Aff. ¶¶ 1, 9-12.)[8]

4.    Breach of Contract

To establish a binding agreement between two parties, "the mutual assent to be bound by all its material terms must be reflected and manifested either expressly or impliedly in the contract and the contract must be sufficiently definite to enable a court to determine its exact meaning and fix any legal liability of the parties." *Smile, Inc. v.*

---

[8] The amount of attorneys' fees and costs claimed in addition to the $133,176.25 are not mentioned in the affidavit.

*Moosehead Sanitary Dist.*, 649 A.2d 1103, 1105 (Me. 1994); *see also June Roberts Agency, Inc. v. Venture Properties, Inc.*, 676 A.2d 46, 48 (Me. 1996). Here, there is no dispute that Thayer entered into a contract with IWF, and that IWF has failed to pay Thayer for its services performed. Accordingly, Thayer is entitled to summary judgment on count III of its complaint.

5.    Unjust Enrichment

"A claim for unjust enrichment requires the complaining party to 'show that: (1) it conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value.'" *Platz Assocs. v. Finley*, 2009 ME 55, ¶ 27, 973 A.2d 743, 750 (quoting *Me. Eye Care Assocs. v. Gorman*, 2008 ME 36, ¶ 17, 942 A.2d 707, 712 (quotation marks omitted)). '"Recovery under the doctrine of unjust enrichment is measured by the value of the benefits that the plaintiff proves are actually received and retained by the defendant . . . .'" *Platz Assocs.*, 2009 ME 55, ¶ 27, 973 A.2d at 750 (quoting *A.F.A.B., Inc. v. Town of Old Orchard Beach*, 639 A.2d 103, 106 (Me. 1994)).

Here, there is no dispute that there was a contractual relationship between Thayer and IWF. Therefore, to the extent that Thayer asserts an unjust enrichment claim against IWF, the claim fails. *Aladdin Elec. Assocs. v. Town of Old Orchard Beach*, 645 A.2d 1142, 1145 (Me. 1994) ('"Unjust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay."') (quoting *A.F.A.B., Inc.*, 639 A.2d at 105 n. 3).

Additionally, Thayer's claim against M.S.A.D. #61 for unjust enrichment also fails. There is no dispute that there was no contract between Thayer and M.S.A.D #61,

7

and that Thayer did in fact assemble and install a biomass boiler on M.S.A.D. #61's property.[9] However, there is no evidence that M.S.A.D. #61's acceptance or retention of a benefit, if any, would be inequitable. *See Platz Assocs.*, 2009 ME 55, ¶ 31, 973 A.2d at 751-52. M.S.A.D. #61 contracted with IWF to receive heat and hot water, which it did receive, and pays for these services under the terms of its contract with IWF. *See id.* ¶ 31, 973 A.2d at 752. M.S.A.D. #61's "retention of something to which [it] is entitled is not inequitable under any scenario." *Id.* Accordingly, Thayer's motion for summary judgment on count IV of its complaint is denied and M.S.A.D. #61's cross-motion is granted.

## CONCLUSION

Accordingly,

> Thayer's motion for summary judgment against IWF and M.S.A.D. #61 on count I is DENIED. M.S.A.D. #61's cross-motion for summary judgment on count I is GRANTED.

> Thayer's motion for summary judgment against IWF on count II is GRANTED.

> Thayer's motion for summary judgment against IWF on count III is GRANTED.

> Thayer's motion for summary judgment against IWF and M.S.A.D. #61 on count IV is DENIED. M.S.A.D. #61's cross-motion for summary judgment on count IV is GRANTED.

Dated: June 8, 2011

Joyce A. Wheeler
Justice, Superior Court

---

[9] M.S.A.D. #61 claims that Thayer did not confer a benefit on it because IWF owns the fueling system installed by Thayer and M.S.A.D. #61 only receives heat and hot water from the system by virtue of its contract with IWF. (MSAD Mem. at 6.) The court assumes, without deciding that M.S.A.D. #61 receives a benefit by virtue of having heat and hot water.

mberland County
ury Street, Ground Floor
rtland, ME 04101

RICHARD TRAFTON ESQ
TRAFTON & MATZEN
PO BOX 470
AUBURN ME 04212-0470

ROBERT RUESCH ESQ
VERRILL & DANA
PO BOX 586
PORTLAND ME 04112-0586

Portland, ME 04101

JERROL CROUTER ESQ
DRUMMOND WOODSUM & MACMAHON
84 MARGINAL WAY
SUITE 600
PORTLAND ME 04101